**William CONKLIN, Appellant (Defendant),**

v.

**Ernie DEMASTUS, Appellee (Plaintiff).**

No. 09A02–9002–CV–120.

Court of Appeals of Indiana, Second District.

July 15, 1991.

Stephen J. Peters, William N. Ivers, Stewart and Irwin, Indianapolis, for appellant.

Kelly Leeman, Logansport, for appellee.

BUCHANAN, Judge.

## CASE SUMMARY

Appellant-defendant William Conklin (Conklin) appeals the trial court's order setting aside a jury verdict in his favor and ordering a new trial, claiming that court failed to comply with Indiana Rules of Procedure, Trial Rule 59(J)(7), and that the jury's verdict was not contrary to the law and the evidence.

We reverse and remand with instructions to reinstate the jury verdict and original judgment of the court.

## FACTS

The facts which support the trial court's judgment show that on May 18, 1987, the plaintiff, Ernie Demastus (Demastus), was driving his automobile through an intersection in Logansport, Indiana, when he was struck from behind by a car driven by Conklin. As a result of the collision, DeMastus' head and chest hit the steering wheel, and his arm went through the steer-

ing wheel and hit the dashboard of the car. However, neither driver complained of injuries at the accident scene. Both cars sustained only minor damage[1] and did not require towing.

The next day, DeMastus went to his doctor complaining of numbness and pain in his right hand and arm, and pain in his chest. X-rays showed that the previously existing arthritic condition of DeMastus' arm and hand had worsened. When his health failed to improve after undergoing physical therapy, DeMastus consulted Dr. James W. Strickland (Strickland), an orthopedic surgeon specializing in hand and arm injuries.

Strickland diagnosed DeMastus as suffering from a sensory loss and paralysis of the radial nerve in his right arm. Test results indicated an acute lesion of the radial nerve. Later an abscess formation was discovered on the back of DeMastus' upper arm, which was drained by Strickland.

DeMastus also complained of back and hip problems causing him to have difficulty walking. Dr. Anthony Smith of Kokomo examined DeMastus for these complaints and observed that he had a loss of feeling in his hip and legs, and weakness and spasms in the muscles of his left leg.

When his health problems persisted, DeMastus, on July 26, 1988, filed a complaint for damages against Conklin alleging that his physical problems were triggered by the automobile collision with Conklin. Conklin answered denying negligence and DeMastus' claim that his medical problems were caused by the accident.

At trial, evidence showed DeMastus had a lengthy medical history which involved numerous accidents, physical injuries and ailments requiring medical treatment. The first serious injury occurred in 1974, when Demastus was in the Navy. While on shore leave in Turkey, a civil conflict broke out. Caught in the cross-fire and unable to escape, Demastus was hit by shrapnel in the lower tricep and shoulder areas of his

---

1. DeMastus introduced no evidence regarding the amount of damage to his automobile and made no claim for such property damage as a part of this action.

right arm. The shrapnel was removed, and he did not have to be hospitalized.

Later, with his ship still docked in a Turkish port, DeMastus was walking on the pier at night during a blackout when he tripped over a rope used to secure the ship to the dock. Landing on his right arm, the impact shattered the radius head of DeMastus' right elbow joint. Doctors were able to remove and repair the radius head, and after six months of recuperation DeMastus returned to full-time duty.

After leaving the Navy, DeMastus worked at Continental Steel from 1977 to February of 1986. During this time DeMastus' physician, Dr. Cheng (Cheng), treated him for severe migraine headaches, and arm, shoulder, neck, elbow, and lower back pain. Cheng prescribed various medications for DeMastus' migraine headaches and injected a steroid into DeMastus' shoulder and elbow in an attempt to alleviate the pain and arthritic condition of the joints. Ultra-sound therapy was also used to treat DeMastus' arm, shoulder, elbow, back, and neck.

When Cheng died in 1984, her husband, Dr. Johnson Chu (Chu), took over the treatment of DeMastus. Chu diagnosed DeMastus' pain as caused by myositis, severe traumatic arthritis, tendonitis, and bursitis.

DeMastus continued to experience numerous accident-related injuries between 1979 and 1987, which required medical treatment. On November 24, 1979, he injured his neck while operating a sledge hammer. On December 6, 1979, he severely sprained his back in an accident at work. On May 22, 1981, he suffered a bruise to his thigh. On November 11, 1981, DeMastus fell at work and broke his left arm. On April 23, 1983, DeMastus was involved in an automobile accident and complained of pain throughout his body. On April 15, 1985, he sprained his foot. On September 7, 1985, he hurt his right shoulder. On October 6, 1986, DeMastus fell on some cement and injured the elbow of his right arm. On January 27, 1987, he injured his lower back and neck while shoveling snow. On May 18, 1987, he was involved in the auto accident with Conklin. On June 3, 1987, Demastus "banged" his elbow at work, suffering a scrape, pain, and a bruise. On June 25, 1987, he hurt his arm while working on a garage door. Between late 1978 and May 18, 1987, DeMastus saw either Cheng or Chu for pain in his head, right arm, elbow, shoulder, neck and lower back nearly 1300 times, an average of approximately 150 times per year.

The negligence action against Conklin was tried before a jury on October 2–4, 1989. During closing argument, Conklin's attorney conceded his client was more than 50% at fault for the accident, but claimed the accident was not the proximate cause of DeMastus' debilitating injuries:

"Now, Mr. Leeman's [DeMastus' attorney] is correct, liability does have to come first. I'm not about to stand here and try to argue to you people that when you turn left into somebody's rear quarter panel you're not at fault.... He [Conklin] just didn't see Ernie. He should have, didn't [sic]. Is it negligence? Sure. We're not going to contest that.

Now there is testimony that Mr. DeMastus may have come down Wilkinson Street or he may have pulled out of Harvey's parking lot. Did that contribute to it? You've got a photo of the accident scene. You can take a look at it. If you think that maybe that's five or ten per cent, he should have come straight across the intersection, then five or ten per cent ought to be assessed against Mr. DeMastus. Yeah, that's your call. *But I won't argue with you that Mr. Conklin was at least fifty or more per cent at fault for this accident. There's no question about it. The real issue in this case is [whether] all of this, all of these debilitating injuries flow from that one event.*"

*Record* at 922-3. (emphasis supplied).

"All right. So, in essence, I've given up on liability. You've heard me. And we did admit that Mr. Conklin did something that was negligent ..."

*Record* at 934.

Following deliberations the jury returned a verdict form in favor of Conklin:

"We the Jury, find that the Defendant, William E. Conklin, was not at fault or that Plaintiff, Ernie DeMastus', fault, was more than fifty (50%) percent.

'We the Jury, therefore find for the Defendant, William E. Conklin, and against the Plaintiff, Ernie DeMastus. . . ."

*Record* at 158, 161.

The trial court entered judgment on the verdict that same day. About two weeks later DeMastus filed a Motion to Correct Errors and Motion for Judgment on the Evidence arguing that the jury verdict was contrary to the evidence and the law. Following a response by Conklin, DeMastus replied arguing additionally that the judgment was against the weight of the evidence. After a hearing, the trial court declared that the jury had disregarded the instruction of the court,[2] and ordered the judgment set aside and the case retried.

On appeal from this order, Conklin raises two issues which we consolidate into one:

### ISSUE

Did the trial court err in setting aside the jury verdict and ordering a new trial?

### DECISION

PARTIES' CONTENTIONS—Conklin argues that the verdict was supported by the evidence and the law and argues that the statements in closing argument were only expressions of an opinion and did not constitute binding admissions on the issue of fault.[3] In addition, Conklin contends DeMastus waived the issue by submitting the verdict form used by the jury, and that the trial court failed to comply with T.R. 59(J)(7) in setting aside the verdict and ordering a new trial. DeMastus responds that, with Conklin's admission that he was more than 50% at fault, the verdict "did not make any sense" and, therefore, the court acted properly in setting aside the verdict.

CONCLUSION—The trial court erred; the jury verdict in favor of Conklin must be reinstated.

■ A trial judge undertakes a dangerous mission when granting a new trial because the jury's verdict does "not accord with the evidence," just as an appellate court must tread lightly in reversing a trial court that has acted as a thirteenth juror with the objective of insuring "that the jury system remains a rational process." *Memorial Hospital v. Scott* (1973), 261 Ind. 27, 33, 300 N.E.2d 50, 54. In this case it seems to us the jury did act in conformity with the instruction of the court and thus there was no basis to set aside the verdict because it failed to follow the instruction by returning a verdict that was clearly erroneous or not supported by the evidence.

The critical question is how Conklin's admission that the accident was mostly his fault can be reconciled with the verdict form returned by the jury declaring that Conklin was not at fault or less than fifty percent at fault, and therefore not liable for damages. A logical answer is provided by the court's final instruction explaining the steps that the jury should take during its deliberations:

"You will first determine whether or not the percentage of fault, if any, of the Plaintiff exceeds fifty percent (50%) of the *total fault involved in the action which caused his injuries.* If the fault of the Plaintiff exceeds fifty percent (50%), you shall find a verdict for the Defendant as to the Plaintiff and no further deliberations are required."

*Record* at 182. (emphasis supplied).

■ For negligence to be actionable, there must be a breach of a duty that is owed and injury proximately caused by the breach. *Bridgewater v. Economy Engineering Co.* (1985), Ind., 486 N.E.2d 484; *Miller v. Griesel* (1974), 261 Ind. 604, 308

---

2. The trial court's instruction to the jury regarding calculation of liability and damages appears *infra*.

3. The issue of whether a statement made by counsel during closing argument could consti-

tute a binding admission on an issue has yet to be addressed by an Indiana appellate court. Because of the manner in which we resolve this case, we need not address this question.

N.E.2d 701. This final instruction links together the concept of a breach of a duty (fault) and proximate cause. Having been so instructed, it would not be inconsistent for the jury to accept Conklin's concession that he was at *fault for the accident,* but conclude that the accident was not the "action" which caused his [DeMastus'] injuries," and thus return the verdict form it did believing it encompassed the conclusion that DeMastus' physical problems were pre-existing, resulted from previous negligent medical treatment, or were otherwise unrelated to the minor auto accident.

In *Memorial Hospital, supra,* our supreme court established the standard for reviewing a trial court's decision to grant a new trial pursuant to its role as a thirteenth juror:

"The sole duty of an appellate court is to examine the record to see if:

(a) The trial court abused its judicial discretion;

(b) A flagrant injustice has been done the appellant; or

(c) A very strong case for relief from the trial court's ordering a new trial has been made by the appellant...."

*Id.* 261 Ind. at 33, 300 N.E.2d at 54; *see also Brown v. Conrad* (1988), Ind.App., 531 N.E.2d 1190, trans. denied.

To facilitate appellate review under this standard, the entry of a new trial under the thirteenth juror rule must be supported by findings of fact as provided by T.R. 59(J)(7). *Coffel v. Perry,* (1983), Ind.App., 452 N.E.2d 1066. T.R. 59(J)(7) provides in pertinent part:

"When a new trial is granted because the verdict ... [does] not accord with the evidence, the court shall make special findings of fact upon each material issue or element of the claim or defense upon which a new trial is granted. Such finding shall indicate whether the decision is against the weight of the evidence or whether it is clearly erroneous as contrary to or not supported by the evidence; if the decision is found to be against the weight of the evidence, the findings shall relate the supporting and opposing evidence to each issue upon which a new trial is granted; if the decision is found to be clearly erroneous as contrary to or not supported by the evidence, the findings shall show why judgment was not entered upon the evidence."

Although the trial court treats this verdict as having resulted from the failure to follow its instructions, it would appear the decision was predicated on the theory that the verdict did not accord with the evidence, which would require the court to issue findings as required by T.R. 59(J)(7). The court's failure to issue these findings, however, does not mandate a remand of this case to give the trial court another chance to comply with the dictates of T.R. 59(J)(7). *See State v. White* (1985), Ind., 474 N.E.2d 995; *Blay v. Vogel* (1989), Ind. App., 533 N.E.2d 172, trans. denied; *Tancos v. A.W., Inc.* (1986), Ind.App., 502 N.E.2d 109, trans. denied. As the reasoning behind the court's decision is evident from the record of the hearing held on DeMastus' Motion to Correct Errors, *supplemental record* at 6–9, appellate review is not complicated by the failure to issue such findings.

Substantial evidence was introduced supporting Conklin's claim that the accident did not cause DeMastus' physical ailments. While in the Navy, DeMastus sustained shrapnel injury to his tricep and shoulder area of his right arm, *record* at 284–5, and shattered the radius head of his elbow in a fall. *Record* at 286. After leaving the Navy, DeMastus, went to either Cheng or Chu for pain nearly 1300 times in less than nine years. *Record* at 586–91. DeMastus was diagnosed as having myositis, severe traumatic arthritis, tendonitis, and bursitis. *Record* at 772. In addition, he suffered from severe migraine headaches and was injured in numerous accidents, both before and after the automobile collision with Conklin. *Record* at 288–89, 291.

Besides this voluminous medical history, the jury had additional reasons for disbelieving DeMastus' claim that his medical problems were triggered by the accident. DeMastus testified that he had no problems with his right arm prior to the acci-

dent, *record* at 825–27, which claim was contradicted by Chu who testified that he treated DeMastus for pain in his right shoulder and arm on numerous occasions. *Record* at 483, 595. DeMastus denied having a history of repetitive migraine headaches prior to the accident, *record* at 829–30, a contention that was disputed by Chu who said DeMastus suffered from severe migraine headaches requiring medical attention on the average of one or two times a week. *Record* at 471–74. In addition, DeMastus testified that after the accident he had not been able to drive anywhere by himself until June of 1988. *Record* at 831–32. However, a surveillance videotape evidence showed DeMastus driving alone to Indianapolis as early as January of 1988. *Record* at 678, 949. DeMastus also claimed that after the car accident he could not bend over further than to touch his knees. *Record* at 833–34. However, surveillance photographs and videotapes showed DeMastus walking, then bending over and touching his toes. *Record* at 679, 765.

Taking into account DeMastus' lengthy medical history prior to the automobile accident with Conklin, his less than candid testimony at trial, and the testimony of the police officer called to the accident scene who indicated that the mishap involved only minor damage to the automobiles, *record* at 267 (testimony), 259–63 (photographs), and no injuries were reported at the scene, *record* at 266–8, the jury was presented with substantial evidence the accident was not the proximate cause of the DeMastus' physical ailments.

In reviewing this case in light of the standard of review established in *Memorial Hospital, supra.*, we must conclude that, considering the unique circumstances of this case, the trial court abused its discretion in setting aside the jury verdict. Additionally, a strong case has been made for not subjecting Conklin to a new trial. Even if the jury failed to explicitly follow the court's instructions, *supplemental record* at 7, there is strong and persuasive evidence supporting a determination that DeMastus was not injured as a result of the accident which was Conklin's fault, i.e.

fault but no damages (*damnum absque injuria*). *See Memorial Hospital, supra.* DeMastus had his day in court and he is not entitled to another roll of the dice. In setting aside the jury's verdict and ordering a new trial, the court erred. *See State Farm Life Ins. Co. v. Spidel* (1964), 246 Ind. 458, 202 N.E.2d 886; *Burell v. Riggs* (1990), Ind.App., 557 N.E.2d 698, trans. denied.

Judgment reversed with instructions to reinstate the verdict and judgment in favor of Conklin.

SHIELDS and STATON, JJ., concur.