**Ralph KIRCHOFF and Wilma Kirchoff, Appellants/Cross–Appellees–Defendants/Counterclaimants,**

v.

**Jeff W. SELBY and Diane L. Selby, Appellees/Cross–Appellants–Plaintiffs/Counterdefendants.**

No. 26A01–9601–CV–34.

Court of Appeals of Indiana.

June 24, 1997.

Patrick A. Shoulders, Robert L. Burkart, Ziemer, Stayman, Weitzel & Shoulders, Evansville, for Appellants/Cross–Appellees–Defendants/Counterclaimants.

Dean E. Richards, Indianapolis, for Appellees/Cross–Appellants–Plaintiffs/Counterdefendants.

## OPINION

BAKER, Judge.

Appellees/cross-appellants Jeff and Diane Selby received a judgment of $730,000 on their claim for securities fraud against appellants/cross-appellees Ralph and Wilma Kirchoff. When the Kirchoffs presented newly discovered evidence suggesting that some of the Selbys' trial exhibits were fabricated and some of their trial testimony was perjured, the trial court set aside the verdict and ordered a new trial. The Kirchoffs now appeal, claiming that they were entitled to judgment on the evidence prior to the jury's verdict. The Selbys also appeal, asserting that the trial court erred in granting the motion for a new trial and in dismissing a disciplinary action which the Selbys had initiated against Ralph Kirchoff and his attorneys following the trial.

## FACTS

The John Grisham-like [1] facts in this appeal are very much in dispute. For approximately eleven years, until December 8, 1988, Ralph Kirchoff was Chairman of the Board of Worthington State Bank (Worthington Bank) located in Worthington, Indiana. During his term as chairman, Ralph owned 892 of the 2000 outstanding Worthington Bank shares of stock and, in addition, his wife, Wilma, owned 100 shares of the stock.

In 1986, the Board of Directors of Worthington Bank began to explore the possibility of selling the bank. As a result, they hired Douglas Austin & Associates, Inc. to prepare various documents regarding the bank's financial condition, including a Confidential Bank Sales Prospectus (Bank Prospectus) dated February 1987. The Bank Prospectus was distributed to various persons interested in purchasing Worthington Bank, including Mark D. Van Eaton, an investment broker. After Van Eaton reviewed the Bank Prospectus and other Worthington Bank documents, he offered to purchase all 2000 shares of Worthington Bank stock.

To facilitate the purchase, Van Eaton incorporated a holding company, Worthington Bancshares, Inc. (Bancshares), of which he was the sole officer, director and shareholder. Bancshares' application for holding company status indicated that its purpose was to acquire all 2000 shares of Worthington Bank stock. This application was approved by the Federal Reserve Board on October 30, 1988.

Thereafter, Bancshares entered into an agreement to purchase Worthington Bank stock for $2,398.58 per share. To raise money for the purchase, Bancshares issued and sold 700 shares of its stock for $2,300 per share. Ralph Kirchoff purchased 275 shares for $632,500. Additionally, Jeff and Diane Selby executed subscription agreements to purchase 195 and 20 shares of Bancshares stock respectively. To finance their purchases, the Selbys borrowed $250,000 from

Worthington Bank and $244,500 from the Kirchoffs in December 1988. According to the Selbys, they borrowed the money in order to purchase shares of Worthington Bank stock from the Kirchoffs, which the Selbys then exchanged for Bancshares stock. In contrast, the Kirchoffs contend that the loans supplied the Selbys with the money to purchase Bancshares stock and that the Selbys never directly owned Worthington Bank stock.

To obtain the remainder of the money needed to purchase the Worthington Bank stock, Bancshares obtained a loan from Summit Bank for $2,570,000. The loan documents indicated that the purpose of the loan was to assist Bancshares in purchasing the 2000 outstanding shares of Worthington Bank stock. On November 30, 1988, the Kirchoffs transferred their stock certificates representing 992 shares in Worthington Bank to Bancshares. Prior to that date, Bancshares had obtained the remaining 1008 shares of outstanding Worthington Bank stock. Shortly thereafter, Bancshares tendered all 2000 shares back to Worthington Bank and received a single stock certificate representing the 2000 shares. On January 3, 1989, Bancshares paid each Worthington Bank shareholder $2,398.58 for his or her shares, including $239,858 to Wilma Kirchoff for her 100 shares and $2,139,533.36 to Ralph Kirchoff for his 892 shares.[2]

While Bancshares was arranging the financing for this transaction, Van Eaton replaced Ralph Kirchoff as Chairman of the Board of Worthington Bank on December 8, 1988. Thereafter, on November 14, 1991, the Indiana Department of Financial Institutions (DFI) seized Worthington Bank and appointed the Federal Deposit Insurance Corporation (FDIC) as its receiver. Van Eaton then instituted an action against the DFI in the Hancock Circuit Court seeking damages for wrongful seizure. Van Eaton's action is pending at the time of this appeal. At the

---

1. This phrase was aptly coined by the parties during oral argument, held on February 27, 1997, in Indianapolis. Undoubtedly, the parties were referring to noted attorney/author John Grisham, whose numerous books have involved issues of legal intrigue and deception.

2. Initially, Bancshares only paid Ralph $1,509,-533.36 for his shares because Ralph agreed to loan Bancshares $630,000. However, Bancshares repaid the loan in two payments in January and June 1989, giving Ralph a total of $2,139,533.36 for his Worthington Bank stock.

same time, the FDIC initiated three administrative enforcement actions against Van Eaton for unsafe and unsound banking practices, all of which were settled on December 22, 1994. As a result of the administrative actions, Van Eaton made restitution to Worthington Bank and agreed not to participate in any banking activities in the future.

At approximately the same time the DFI seized Worthington Bank, the Selbys instituted the current action against the Kirchoffs for securities fraud. In essence, the Selbys alleged that the Kirchoffs fraudulently misrepresented that Worthington Bank was a worthy investment by failing to reveal the quality of various loans held by the bank in the Bank Prospectus. R. at 74–93. In response, the Kirchoffs filed a counterclaim against the Selbys for defaulting on the promissory note executed by them in December 1988. From July 31, 1995, to August 15, 1995, a jury trial was held on the claims, after which the Kirchoffs moved for judgment on the evidence. The trial court denied the Kirchoffs' motion and the jury returned a verdict in favor of the Selbys for $730,000. The jury also found for the Selbys on the Kirchoffs' counterclaim.

Following the verdict, but prior to the trial court's entry of judgment, Donna Fink, who was employed as a legal assistant by the Selbys' attorney, contacted Bruce Kirchoff, the Kirchoffs' son. Fink informed Bruce that she had assisted the Selbys' attorney in creating evidence and rehearsing false testimony for the trial. In particular, Fink alleged that the Selbys and their attorney altered the Bank Prospectus, which had been admitted during trial as Exhibit 10, by removing numerous pages from the prospectus and manipulating its letterhead to generate cover and introduction pages. This allegedly manufactured evidence, which was introduced as Exhibit 12, was introduced to support the Selbys' theory that Ralph Kirchoff had failed to disclose all of Worthington Bank's troubled loans. Additionally, Fink stated that she had assisted the Selbys' attorney in creating trial Exhibit 61, a Stock Exchange and Subscription Agreement (Subscription Agreement) which was signed by the Selbys and Van Eaton, by tracing the signatures onto the documents. This Subscription Agreement provided that the Selbys agreed to purchase Worthington Bank stock for $2,300 per share and exchange it for Bancshares stock. Fink also stated that she assisted the Selbys' attorney in inventing and rehearsing testimony that the Selbys executed the Subscription Agreement at Worthington Bank on November 13, 1988. On September 5, 1995, Fink gave a sworn statement, which was made available to the Selbys, in which she repeated all of these allegations.

On September 7, 1995, the Selbys filed a motion for sanctions, disciplinary action, damages and attorney fees against Ralph Kirchoff and his attorney. This motion sought sanctions on the basis of Ralph's admission during trial that he had filed affidavits and documents prior to trial which contained errors and his requests during trial to correct those erroneous documents. Specifically, the Selbys argued that Ralph Kirchoff and his attorney should be sanctioned for filing these alleged "perjurious" documents. Additionally, the motion accused Ralph and his attorney of fabricating Fink's statement. The next day, the Kirchoffs filed a motion to correct error in which they argued that they were entitled to a new trial on the basis of newly discovered evidence. In the alternative, the Kirchoffs moved for judgment on the evidence on the grounds that the documentary evidence presented at trial showed conclusively that the Kirchoffs did not sell the Selbys any shares of Worthington Bank stock and, therefore, the Selbys and the Kirchoffs were not in privity. Additionally, the Kirchoffs argued that they were entitled to judgment on the evidence because the Selbys failed to demonstrate several other requirements for recovery under the Securities Regulation Act, including the requirements that they purchase the stock for value, that they suffer a legal loss as a result of the alleged fraud and that they tender the stock back to the fraudulent party prior to initiating their civil claim.

Thereafter, on October 30, 1995, the trial court held a hearing on the Selbys' motion for sanctions and the Kirchoffs' motions to correct error and for judgment on the evi-

dence. However, after the Selbys stated that they were not seeking a monetary penalty from the Kirchoffs but were merely seeking an admonishment, the trial court dismissed the motion for sanctions. The parties then presented evidence on the motion to correct . error. Specifically, the Kirchoffs presented the testimony of Fink regarding the manufactured exhibits and perjured testimony. In response, the Selbys presented testimony, primarily in the form of affidavits, that Fink fabricated her allegations for personal reasons, including her anger at the Selbys for failing to pay her for services she provided prior to and during trial. The Selbys also presented several affidavits and the testimony of attorney John Price, who had previously represented them during the proceedings, that both Exhibit 12 and the signed Subscription Agreement were in existence prior to the time Fink allegedly manufactured them. The next day, the trial court denied the Kirchoffs' motion for judgment on the evidence, but granted the motion to correct error, set aside the jury verdict and ordered a new trial. The Kirchoffs now appeal the denial of their motion for judgment on the evidence. On cross-appeal, the Selbys challenge the trial court's decision to set aside the jury verdict and order a new trial. The Selbys also contend that the court erroneously dismissed their motion for sanctions.

*DISCUSSION AND DECISION* [3]

In this appeal and cross-appeal, the parties present five main issues for review which we restate as follows: 1) whether the trial court erred in setting aside the jury verdict and ordering a new trial because of newly discovered evidence; 2) whether privity between a buyer and seller is necessary to maintain an action for securities fraud; 3) if privity is required, whether the evidence demonstrated that the Selbys had the necessary relationship with the Kirchoffs; 4) whether the Kirchoffs were entitled to judgment on the evidence because the Selbys failed to comply with the requirements of Indiana's Securities Regulation Act; and 5) whether the trial court erred in dismissing the Selbys' motion for sanctions.

### I. Newly Discovered Evidence

First, we address the Selbys' argument that the trial court erred in granting the Kirchoffs' motion to correct error on the basis of newly discovered evidence. Specifically, the Selbys present the following arguments: 1) the trial court failed to rule on the motion in a timely manner; 2) the court failed to enter written findings of fact and conclusions of law; and 3) the evidence does not support the trial court's decision to grant a new trial.[4]

3. Initially, we observe that the Selbys have ignored several aspects of the Indiana Appellate Rules. Specifically, the Selbys' brief lacks a recitation of the facts relevant to the issues presented for review as required by App.R. 8.3(A)(5), is not double spaced as required by App.R. 8.2(A)(1), contains few citations to the record as required by App.R. 8.3(A)(5), and does not cite any authorities in support of their arguments as required by App.R. 8.3(A)(7). Instead, the Selbys' brief is filled with improper, anecdotal facts which are not part of the record and have no bearing on this appeal. A party's failure to follow the appellate rules can, in egregious situations, lead to dismissal of the appeal. *Sartain v. Blunck*, 453 N.E.2d 324, 325 (Ind.Ct.App.1983). However, it is within this court's discretion to consider an appeal when a party substantially complies with the appellate rules. *Coachmen Industries, Inc. v. Crown Steel Co.*, 577 N.E.2d 602, 603 (Ind.Ct. App.1991). Notwithstanding the numerous errors, because we believe that the Selbys' brief substantially complies with the appellate rules, we exercise such discretion here.

4. In addition, the Selbys contend that the trial judge was without jurisdiction to grant the motion for a new trial because "he had been disqualified and the Warrick Superior Court Judge only had jurisdiction." Appellees' Brief at 51. However, the Selbys fail to cite anything in the record or any authority to support their argument. Failure to make a cogent argument results in waiver of that argument on appeal. *Indiana Limestone Co. v. Staggs*, 672 N.E.2d 1377, 1384 (Ind.Ct.App.1996). Further, the Selbys fail to inform this court of the date the Gibson Circuit Court judge was removed and the Warrick Superior Court judge was appointed. However, notwithstanding waiver, we note that Ind.Trial Rule 63(A) provides as follows:

> The judge who presides at the trial of a cause or hearing at which evidence is received shall, if available, hear motions and make all decisions and rulings required to be made by the court relating to the evidence and the conduct of the trial or hearing after the trial or hearing is concluded.

Thus, the trial judge who presided during trial, specifically the Gibson Circuit Court judge, was required to rule on the motion to correct error

## A. Timeliness of Order

First, the Selbys challenge the timeliness of the trial court's order granting the motion to correct error. In particular, the Selbys argue that the trial court failed to rule within forty-five days of the hearing and, as a result, the motion was deemed denied.

Pursuant to Ind.Trial Rule 53.3(A), a trial court is required to set a hearing on a motion to correct error within forty-five days after it is filed and to rule on the motion within thirty days after the hearing. The failure to act on a motion to correct error within the time limits prescribed by T.R. 53.3 extinguishes the court's authority to rule on the motion and any subsequent ruling is a nullity. *Cavinder Elevators, Inc. v. Hall,* 670 N.E.2d 61, 63 (Ind.Ct.App.1996).

In the instant case, the record reveals that the Kirchoffs filed their motion to correct error on September 8, 1995. On September 19, 1995, the trial court set the motion for hearing to be held on October 30, 1995. After each party presented evidence at the hearing, the trial court orally granted the motion to correct error, set aside the jury verdict and ordered a new trial. R. at 680–690. Because the trial court ruled on the motion to correct error within thirty days of the hearing, its order was timely under T.R. 53.3.

## B. Written Findings

■ Next, the Selbys argue that the trial court was required, pursuant to Ind.Trial Rule 59(J)(7), to enter written findings in support of its grant of the motion to correct error. T.R. 59(J)(7) provides in pertinent part as follows:

In reviewing the evidence, the court shall grant a new trial if it determines that the verdict of a non-advisory jury is against the weight of the evidence; and shall enter judgment, subject to the provisions herein,

if the court determines that the verdict of a non-advisory jury is clearly erroneous as contrary to or not supported by the evidence, or if the court determines that the findings and judgment upon issues tried without a jury or with an advisory jury are against the weight of the evidence.

... If corrective relief is granted, the court shall specify the general reasons therefor. When a new trial is granted because the verdict, findings or judgment do not accord with the evidence, the court shall make special findings of fact upon each material issue or element of the claim or defense upon which a new trial is granted.

As this rule clearly states, a trial court is only required to enter special findings when it grants a new trial because the verdict, findings or judgment is against the weight of the evidence. In the instant case, however, the trial court granted a new trial due to the existence of newly discovered evidence. When a court grants a new trial because of newly discovered evidence, it is not required to specifically state the justifications for its ruling. *Newell v. Walker,* 478 N.E.2d 1246, 1250 (Ind.Ct.App.1985). Thus, the trial court did not err.

## C. Sufficiency of the Evidence

The Selbys also challenge the sufficiency of the evidence to support the trial court's grant of the motion to correct error on the basis of newly discovered evidence. Essentially, the Selbys argue that Donna Fink's statements regarding manufactured exhibits and perjured testimony were refuted by other evidence and testimony and, as a result, were not worthy of credit.[5]

■ Our supreme court has articulated a nine-part test for determining whether to grant a new trial upon a motion to correct error based on newly discovered evidence.

---

unless he was unavailable. *See Roberts v. State,* 500 N.E.2d 197, 198 (Ind.1986) (absent finding that retired judge was unavailable, he was to rule on motion to correct error). Because the Selbys do not argue that the Gibson Circuit Court judge was unavailable, we find no error.

**5.** Included among their allegations against Donna Fink, the Selbys comment on the propriety of

the trial judge's actions during and after trial and accuse the Kirchoffs' attorney of misconduct and perjury. We find these comments wholly improper for an appellate brief, particularly inasmuch as the comments are not directed toward any issue before this court. We admonish Selbys' counsel not to engage in such conduct in the future.

*Fox v. State*, 568 N.E.2d 1006, 1007 (Ind. 1991); Ind.Trial Rule 59. Under the *Fox* test, such a motion must be supported by affidavits which demonstrate that:

(1) the evidence has been discovered since the trial; (2) it is material and relevant; (3) it is not cumulative; (4) it is not merely impeaching; (5) it is not privileged or incompetent; (6) due diligence was used to discover it in time for trial; (7) the evidence is worthy of credit; (8) it can be produced upon a retrial of the case; and (9) it will probably produce a different result.

*Fox*, 568 N.E.2d at 1007. In determining whether the evidence would produce a different result, the judge may consider the weight that a reasonable trier of fact would give the evidence and may evaluate its probable impact on a new trial in light of all the facts and circumstances shown at the original trial. *Id.* On appeal, we give deference to the trial court's decision and will not reverse its ruling absent an abuse of discretion. *Id.*[6]

■ In support of their motion to correct error in the instant case, the Kirchoffs presented the testimony of Donna Fink, who was formerly a legal assistant for the Selbys' attorney. Fink testified that during trial she assisted the Selbys, their attorney and Van Eaton in manufacturing Exhibit 61, the Stock Exchange and Subscription Agreement, by tracing signatures on the document and preparing testimony regarding its execution. Additionally, Fink testified that she assisted the Selbys' attorney in creating Exhibit 12, a Worthington Bank prospectus, from Exhibit

10, another Worthington Bank prospectus, by removing certain pages from Exhibit 10. As the trial court correctly found, this evidence, as well as the evidence set forth in the *FACTS*, is sufficient to establish the nine *Fox* factors and to support the grant of a new trial.[7] On appeal, the Selbys do not challenge any of the nine *Fox* factors. Instead, the Selbys sole argument is that their own evidence, presented primarily in the form of affidavits, so clearly refutes Fink's testimony that the trial court erred in finding it credible. We disagree.

The evidence presented by the Selbys during the hearing on the motion to correct error falls into two general categories: 1) evidence showing that the Stock Subscription and Exchange Agreement and Exhibit 12 were in existence prior to the date on which Fink claims to have manufactured them; and 2) evidence demonstrating that Fink falsely accused the Selbys and their attorney for personal reasons. The trial court heard all of this evidence and, nevertheless, determined that Fink's testimony was worthy of credit and could lead to a different result upon retrial. The Selbys arguments on appeal are merely an invitation for this court to reweigh the evidence. We decline the invitation. The trial court did not abuse its discretion in setting aside the verdict and in ordering a new trial.

## II. *Privity*

Next, we address the Kirchoffs' claim that they were entitled to judgment on the evidence because the Selbys failed to demon-

---

**6.** The Selbys take issue with the standard used by the trial court in ruling on the Kirchoffs' motion for a new trial. In particular, the Selbys argue that the trial court incorrectly applied the *Fox* test because "[t]he law has changed considerably and added a heavier evidentiary burden upon the moving party when they try to obtain a Motion to Correct Errors based upon newly discovered evidence that they found existed after the trial." Appellees' Brief at 52. The Selbys then argue that the court should have applied the test set forth in *Conklin v. Demastus*, 574 N.E.2d 935 (Ind.Ct.App.1991). However, *Conklin* is applicable only when a trial court sets aside a verdict pursuant to T.R. 59(J)(7) because the verdict is contrary to the evidence presented at trial or contrary to law. As previously discussed, the trial court's grant of the motion to correct error in the instant case was not based upon T.R.

59(J)(7). Thus, the *Conklin* standard is inapplicable.

Additionally, the Selbys argue that the trial court incorrectly stated that it would examine Fink's testimony to determine whether it was worthy of credit. Seemingly, the Selbys believe that the trial court should have scrutinized Fink's testimony more closely. However, the Selbys fail to cite any support for their proposition that the "worthy of credit" standard, which is contained in the *Fox* test, should not be applied. Thus, we find no error.

**7.** In fact, we commend the trial court on its meticulous attention to the *Fox* test and its recitation of evidence supporting each factor of the test.

strate that they were in privity with them as required by the Act. The Selbys neither confirm nor dispute this privity requirement, maintaining instead that the evidence demonstrated that they were in privity with the Kirchoffs.[8] Nevertheless, as an issue of first impression, we must first consider whether privity is a requirement for bringing an action for securities fraud in Indiana.

■ Initially, we note our standard of review. When assessing the propriety of the trial court's decision to deny judgment on the evidence, we employ the same standard as the trial court. *TRW, Inc. v. Fox Development Corp.*, 604 N.E.2d 626, 629 (Ind.Ct.App. 1992), *trans. denied.* Judgment on the evidence is proper only where there is no evidence on one or more of the essential elements of the plaintiff's cause of action, or the evidence is without conflict and leads only to inferences in favor of the moving party. Ind.Trial Rule 50(A). On appeal, we will consider only the evidence most favorable to the nonmovant along with all reasonable inferences drawn therefrom. *TRW*, 604 N.E.2d at 629.

Indiana's Securities Regulation Act (Indiana Securities Act), IND. CODE §§ 23–2–1–1 to 23–2–1–24, makes it unlawful for an individual in connection with an offer, sale, or purchase of any security:

> (1) to employ any device, scheme or artifice to defraud, or

> (2) to make any untrue statements of a material fact or to omit to state a material fact necessary in order to make the statements made in the light of circumstances under which they are made, not misleading, or

> (3) to engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person.

I.C. § 23–2–1–12. Although the Act authorizes an action for securities fraud against any person who offers, sells or purchases a security in violation of the Act, I.C. § 23–2–1–19, it does not define who is a "seller" and

it is not clear regarding who is entitled to bring such an action.

However, I.C. § 23–2–1–19, which permits civil actions for securities fraud, is based upon Section 410 of the Uniform Securities Act of 1956, which in turn is modeled after section 12 of the Federal Securities Act of 1933 (Federal Securities Act), 15 U.S.C. § 77l. According to the drafters of the Uniform Securities Act, the resemblance of the Uniform Securities Act and the Federal Securities Act is intended to "... make for an interchangeability of federal and state judicial precedence in this very important area." Louis Loss and Edward W. Cowett, *Blue Sky Law*, 391 (1958).

■ Further, it is generally accepted in Indiana that when a state statute is modeled after a federal statute, we may look to the cases interpreting the federal statute for guidance in interpreting the Indiana statute. *See Hamilton County Dept. of Public Welfare v. Smith*, 567 N.E.2d 165, 171 n. 2 (Ind.Ct.App.1991) ("Court decisions interpreting federal statutes with similar language and purpose as the state statute under consideration, while not binding on this court, may aid us in construing the state statute."). The civil liability provision of the Federal Securities Act was recently interpreted in *Pinter v. Dahl*, 486 U.S. 622, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988). In *Pinter*, the United States Supreme Court considered whether an investor, who had solicited purchasers of securities in which he had also invested, could be considered a "seller" under the Federal Act, even though he never held title to the securities being sold. Although noting that the civil liability portion of the Federal Act "contemplates a buyer-seller relationship not unlike traditional contractual privity," the Court recognized that the Federal Securities Act defined "sell" to include "every contract of sale or disposition of a security for value," and the terms "offer to sell," "offer for sale," and "offer" as "every attempt or offer to dispose of, or solicitation of an offer to buy, a security or interest in a security, for value." *Id.* at 642–43, 108 S.Ct. at 2076; 15 U.S.C.

---

**8.** During oral argument, the Selbys argued that privity was not necessary, but did not cite any authority in support of their position.

§ 77b(3). The Court further noted that the purpose of the Federal Securities Act, which was to promote full and fair disclosure of information to the public, would best be served if solicitors, who are the persons best positioned to control the flow of information to a potential purchaser and, thus, to prevent injury to the purchaser, were subject to liability under the Federal Securities Act. *Id.* at 646–47, 108 S.Ct. at 2078–79. As a result, the Court concluded that the range of persons potentially liable for securities violations under the Federal Securities Act was not limited solely to those who pass title to the securities; rather, liability extended to those who (1) solicited the purchase and (2) were motivated at least in part by a desire to serve their own financial interests or those of the person actually passing title to the securities. *Id.* at 647, 108 S.Ct. at 2078–79.

Although determining that the Federal Securities Act defined sellers broadly, the Court went on to note that 15 U.S.C. § 77*l*, which limits liability only to defendants from whom plaintiffs "purchased" securities, limited the class of potential plaintiffs to immediate buyers. In particular, the Court interpreted the statute's purchase requirement to limit a seller's liability to those individuals who actually purchased from the seller. The purpose of this requirement is to prevent remote purchasers "from bringing actions against remote sellers." *Id.* at 643 n. 21, 108 S.Ct. at 2077 n. 21. Thus, the Court concluded that "a buyer cannot recover against his seller's seller." *Id.*

In the instant case, although modeled after the Federal Securities Act, the Indiana Securities Act defines the class of persons to whom a seller is potentially liable differently. Specifically, while the Federal Securities Act provides that persons violating the Act "shall be liable to the person purchasing the security from him ...," 15 U.S.C. § 77*l*, the Indiana Securities Act provides that a person who violates the Act "is liable to any other party to the transaction, who did not knowingly participate in the violation or who did not have, at the time of the transaction,

knowledge of the violation." I.C. § 23–2–1–19. Further, a transaction is defined as "every acquisition, *direct or indirect,* of a security or an interest in a security for value." I.C. § 23–2–1–1(i)(3) and (4) (emphasis added). Pursuant to this definition, and interpreting the Indiana Securities Act most broadly, it would appear that the legislature intended for any person who acquires a security, no matter how remote, to have a cause of action for securities fraud against any seller within the chain of title. However, we do not believe that this is what the legislature intended.

Instead, we believe that the legislature intended, similar to *Pinter v. Dahl,* for the statute's reference to indirect purchases to focus on the class of potential defendants rather than the class of potential plaintiffs. Specifically, we believe that the legislature intended for liability under the Indiana Securities Act to extend to both those persons who directly sell securities and those who indirectly sell securities by participating in or soliciting their sale. Simply put, we do not believe that the legislature intended for remote purchasers to have a cause of action against remote sellers. To interpret the Indiana Securities Act otherwise would violate the long-standing policy against open-ended liability, *see Beecher v. White,* 447 N.E.2d 622, 627 (Ind.Ct.App.1983) (it is a fundamental public policy that liability for past actions should end), as sellers of securities would remain under the dark cloud of litigation indefinitely.

As a result, we hold that the Selbys can maintain a cause of action against the Kirchoffs only under the following circumstances: (1) the Selbys purchased Worthington Bank stock directly from the Kirchoffs, as the Selbys contend; or (2) the Selbys bought Bancshares stock from Bancshares and the Kirchoffs participated in soliciting the Selbys' purchase with the motivation or desire to serve their own or Bancshares' financial interests.[9] If, upon

---

9. In their briefs, the parties spend considerable time arguing whether the Selbys purchased Worthington Bank or Bancshares stock. According to the Kirchoffs, the documentary evidence pre-

sented at trial establishes that the Selbys purchased their stock from Bancshares, rather than from the Kirchoffs or Worthington Bank, and that the Selbys never owned shares of Worthing-

remand, the trial court determines that the Selbys failed to establish either of these circumstances, they may not maintain a direct cause of action against the Kirchoffs.[10]

### III. Securities Regulations Act

The Kirchoffs also contend that they were entitled to judgment on the evidence because the Selbys failed to demonstrate the following facts which would entitle them to relief under Indiana's Securities Regulations Act: 1) the Selbys failed to show that they purchased their securities for value; and 2) the Selbys failed to establish any legal loss as a result of the transaction. Again, we note that judgment on the evidence is proper only where there is no evidence on one or more of the essential elements of the plaintiff's cause of action, or the evidence is without conflict

> ton Bank stock. Specifically, the Kirchoffs argue that the following evidence undeniably establishes that the Selbys purchased Worthington Bancshares stock:
>
> 1. The Kirchoffs' Worthington Bank stock certificates were endorsed and delivered to Worthington Bancshares, not to the Selbys;
> 2. Worthington Bancshares received a single stock certificate representing all 2000 outstanding shares of Worthington Bank stock when it surrendered its numerous stock certificates to Worthington Bank;
> 3. The Kirchoffs' Worthington Bank stock certificates would not permit the transfer of 215 shares to the Selbys due to the denominations of the certificates held by the Kirchoffs unless the certificates had been submitted to Worthington Bank and a stock certificate for 215 shares was reissued;
> 4. Worthington Bank's stock transfer ledger evidenced a transfer of 100 shares from Wilma Kirchoff to Worthington Bancshares on November 30, 1988, and 892 shares from Ralph Kirchoff to Worthington Bancshares on November 30, 1988; and
> 5. The loans from Worthington Bank and the Kirchoffs to the Selbys were in the form of cashiers' checks made payable to the order of Worthington Bancshares.
>
> In response, the Selbys argue that the stock Subscription Agreement, signed by the Selbys and Van Eaton, provides that the Selbys agreed to purchase stock of Worthington Bank for $2300 per share and exchange it for Bancshares stock. According to the Selbys, it is "undisputed fact that Ralph Kirchoff created the Stock Exchange and Subscription Agreement (Exhibit 61) which was signed in 1988 in his presence by Jeff and Diane Selby and with Mark Van Eaton being present." Appellees' Brief at 16.
>
> Although we agree with the Selbys that this evidence is sufficient to overcome the Kirchoffs'

and leads only to inferences in favor of the moving party. Ind.Trial Rule 50(A).

### A. Value

First, the Kirchoffs contend that the Selbys failed to prove that they gave value to the Kirchoffs in exchange for their bank stock. Indiana's Securities Regulation Act defines the sale of a security to include the "disposition of a security ... for value," I.C. § 23–2–1–1(i)(1), and the purchase of a security as "an acquisition, direct or indirect, of a security ... for value." I.C. § 23–2–1–1(i)(4). Thus, to be entitled to maintain an action for securities fraud against the Kirchoffs, the Selbys were required to establish that they purchased their security from the Kirchoffs for value.

> motion for judgment on the evidence, in light of our determination that the trial court correctly set aside the jury verdict and ordered a new trial, we believe that on remand the trial court should determine whether the Selbys purchased stock from Worthington Bank or Bancshares, and the extent to which the Kirchoffs participated in the sale of Bancshares stock.

**10.** We note that if the trial court determines that the Selbys purchased Bancshares stock, but that the Kirchoffs did not participate in any way in soliciting that transaction, then the Selbys might have a claim against the Kirchoffs as a derivative action on behalf of Bancshares. The well-established general rule is that shareholders of a corporation cannot maintain actions in their own name to redress an injury to the corporation. *W & W Equipment Co., Inc. v. Mink*, 568 N.E.2d 564, 570–71 (Ind.Ct.App.1991), *trans. denied.* Instead, a shareholder is required to bring a derivative action on behalf of the corporation. However, the trial court has the authority to permit a shareholder of a closely-held corporation to maintain a direct action against a shareholder when it finds that the following circumstances exist: 1) a direct action will not unfairly expose the corporation or the defendants to a multiplicity of actions, 2) it will not materially prejudice the interests of creditors; and 3) it will not interfere with a fair distribution of the recovery among all interested persons. *Barth v. Barth*, 659 N.E.2d 559, 562 (Ind.1995). The record in the instant case does not reveal that the trial court considered these factors. As a result, if the trial court on remand determines that the Selbys purchased Bancshares stock and that the Kirchoffs did not participate in that transaction, but that the Kirchoffs acted fraudulently towards Bancshares, it must consider whether the Selbys should have brought a derivative action on behalf of Bancshares.

■ In support of their contention that the Selbys failed to prove they acquired the bank stock for value, the Kirchoffs argue that the evidence showed that the consideration they received for their shares of Worthington Bank stock came from Bancshares and not from the Selbys. Further, the Kirchoffs contend that in exchange for the note executed by the Selbys, the Kirchoffs issued a check payable directly to Bancshares. According to the Kirchoffs, this evidence shows that the Selbys purchased their shares from Bancshares, rather than the Kirchoffs, and, therefore, they did not give value for the shares to the Kirchoffs.

As we previously held, however, a seller subject to liability under I.C. § 23–2–1–19 need not be the person directly passing title to the securities. Thus, it is irrelevant whether the note executed by the Selbys was for funds to purchase stock in Worthington Bank or in Bancshares. In either event, the Selbys gave value for their purchase of stock. The trial court did not err in denying the Kirchoffs' motion for judgment on the evidence on this ground.

### B. Legal Loss

■ Next, the Kirchoffs contend that the Selbys failed to establish that they suffered any loss as a result of their purchase of Worthington Bank stock. I.C. § 23–2–1–19(a) describes the remedies available to a party in an action for securities fraud. This section provides that the party may:

> rescind the transaction or [ . . . ] recover the consideration paid, . . . less the amount of any cash or other property received on the security upon the tender of the security by the person bringing the action or for damages if the person no longer owns the

security. Damages are the amount that would be recoverable upon a tender less: (1) the value of the security when the buyer disposed of the security; and (2) the interest as computed in subsection (g)(1) on the value of the security from the date of disposition.

*Id.* According to the Kirchoffs, because the Selbys received 215 shares of Bancshares stock in exchange for their 215 shares Worthington Bank stock, they suffered no harm as a result of the transaction.[11]

However, notwithstanding the Kirchoffs' characterization of the Selbys' loss, the Selbys complaint alleges that their loss resulted from a decrease in the value of their Bancshares stock. In support of this claim, the Selbys presented evidence that in 1991, two years after Worthington Bank was sold, the Indiana Department of Financial Institutions seized Worthington Bank, allegedly resulting in the devaluation of the Bancshares stock. Based upon this evidence, we cannot say that there is a complete lack of evidence that the Selbys suffered a loss. As a result, the trial court did not err in denying the Kirchoffs' motion for judgment on the evidence.[12]

### IV. Motion for Sanctions

Finally, the Selbys contend that the trial court erred in dismissing their motion for sanctions and disciplinary action against the Kirchoffs. Following trial, the Selbys filed a motion for sanctions on the basis of allegedly perjurious affidavits and documents filed prior to trial by Ralph Kirchoff and his attorney, all of which were later corrected at trial. Additionally, the Selbys alleged that Kirchoff and his attorney created "perjurious and false testimony as shown by the Exhibit A

11. The Kirchoffs also argue that the Selbys failed to tender the securities prior to instituting their action for securities fraud as required by I.C. § 23–2–1–19(a). However, we note that the record reveals that as security for the promissory note, the Selbys were required to give the Kirchoffs possession of the stock certificates for the Bancshares stock. R. at 990, 992, 5755. This is sufficient to satisfy the Act's tender requirements.

12. Although we determine that the Kirchoffs have not demonstrated sufficient grounds for judgment on the evidence due to the Selbys' failure to establish a loss, we do not find that the

Selbys have definitively established that they suffered a loss as a result of the Kirchoffs' sale of stock. The record in the instant case reveals that Worthington Bank continued to function and prosper following Van Eaton's assumption of the position of Chairman of the Board on December 8, 1988. In fact, the record shows that Worthington Bank had its two most profitable years in 1989 and 1990. R. at 5194. Nevertheless, the Kirchoffs did not argue for judgment on the evidence on the basis of this evidence and, as a result, we are precluded from considering it.

attached hereto signed by a former assistant of Dean E. Richards, Donna Fink." R. at 500. As a result of these allegations, the Selbys sought "a money award, disciplinary action, costs, monetary sanctions and attorney fees to forever prohibit [Ralph Kirchoff], his attorneys and others to prevent them following this same course of conduct in the future." R. at 507.

However, during the hearing on their motion, the Selbys informed the trial court that they were not seeking monetary damages or attorney fees from the Kirchoffs but, instead, were only seeking to have the matter referred to the Supreme Court Disciplinary Commission and an admonishment from the court. R. at 5907–5909, 5910–5912. As a result, the trial court informed the Selbys that if they wished to file a grievance with the disciplinary commission, they were permitted to do so on their own. R. at 5910. With regard to the Selbys' request for an admonishment, the trial court stated:

> Well, my view of that is that's already history. There's a judgment on that case. It's over with. And if somebody wants to take that to the Court of Appeals and say somebody was a bad person or something, that's okay with me, but I don't particularly feel that I have the right or the obligation, certainly, to do anything in regard to something that occurred in a trial that's over with. Judgment has been entered. The matter is closed.

R. at 5912–13. The trial court then granted the Kirchoffs' motion to dismiss the motion for sanctions. R. at 5917.

Generally, we review a trial court's decision regarding sanctions for an abuse of discretion. *Nesses v. Specialty Connectors Co., Inc.,* 564 N.E.2d 322, 327 (Ind.Ct.App.1990). In the instant case, however, the Selbys do not argue that the trial court abused its discretion in dismissing their motion. Instead, the Selbys contend that the dismissal should be reversed because:

> [T]he trial court was bias [sic] and prejudiced in favor of Attorney Patrick Shoulders and the Kirchoffs in making this ruling which played a large part in the decision not to bring any action whatsoever against Patrick Shoulders for his misconduct before, during and after trial when the court stated it had no jurisdiction. . . . It was believed that Ralph Kirchoff believed himself to be in favor of the court by these incidents and had given him a license to commit further perjury without fear or [sic] retribution from the trial court because of the private conversations that he had with the trial judge and Patrick Shoulders during the whole course of the jury trial.

Appellees' Brief at 47–48.

■ We note that the Selbys do not address the merits of the trial court's decision to dismiss their motion or explain how the trial judge's alleged bias caused him to rule incorrectly in the face of an otherwise meritorious motion for sanctions. Furthermore, the Selbys do not support their allegations against the judge with specific instances of improper conduct.[13] Finally, the Selbys do not point to any place in the record where they objected to Ralph Kirchoffs' behavior, asked that he be admonished or asked that the trial judge recuse himself from the proceedings.[14] Under these circumstances, we

---

13. The Selbys do contend that Ralph Kirchoff occasionally went into the anteroom reserved for attorneys during breaks in the trial and conversed with the judge. However, the Selbys note in their brief that "although the appearance looked bad, [their attorney] did not hear the trial being discussed." Appellees' Brief at 48. We cannot be surprised, given the length of this trial, that the trial judge would on occasion exchange pleasantries with the parties. We reject the Selbys' implication that any such conversation is improper.

14. In their brief the Selbys do refer to their motion for a mistrial due to the "trial judge's sharp rebukes and limitations of testimony" and

the fact that he "only gave Dean Richards seventeen (17) minutes for his opening argument. . . ." Appellees' Brief at 49. However, the Selbys do not argue that the trial court erred in denying their motion. Thus, this motion does not preserve any error in the trial judge's conduct for our review.

Furthermore, we abhor the Selbys' attempts to protest negative rulings by the trial court through attacks on the integrity of the participants in the legal process. Our Supreme Court has set forth Rules of Professional Conduct and a Code of Judicial Conduct by which the performance of attorneys and judges is to be measured. In addition, the court has enacted rules for the disci-

decline to consider the Selbys' contention that the trial court erroneously dismissed their motion for sanctions. *See Matter of Adoption of Johnson,* 612 N.E.2d 569, 572 (Ind.Ct.App.1993) (to preserve error based upon alleged trial judge bias, complaining party must request judge to recuse himself), *trans. denied.*

### V. Conclusion

In sum, we find that the trial court did not err in setting aside the jury verdict and granting a new trial based upon newly discovered evidence. As a result, we remand for a new trial consistent with this opinion. Upon remand, the trial court must determine whether the Selbys purchased Worthington Bank stock from the Kirchoffs or Bancshares stock from Bancshares. If the trial court determines that the Selbys bought Bancshares stock, the court must further determine whether the Kirchoffs participated in the sale of that stock to the Selbys.[15] Finally, we hold that the trial court properly dismissed the Selbys motion for sanctions.

Judgment affirmed.

NAJAM and KIRSCH, JJ., concur.

pline of attorneys and judges for those persons who have legitimate complaints against legal professionals. In light of these available remedies, the Selbys' attempt to use this forum to espouse their allegations against the trial judge and the other attorneys in an attempt to sway this court in our review of legal issues is reprehensible.

Finally, as demonstrated by our review of all of the issues of this cause, we think it readily apparent that the trial judge, who was confronted with complicated issues of first impression and numerous allegations of perjury and other improper conduct, exercised the patience of Job in resolving these issues.

15. On remand, we encourage the trial court and the parties to agree to employ some techniques for simplifying the many complicated issues in this trial for the jury. For example, we have recognized that in the interests of judicial economy, separate trials can be ordered if an issue can be conveniently and expeditiously resolved in that manner. *Frito–Lay v. Cloud,* 569 N.E.2d 983, 990 (Ind.Ct.App.1991). Similarly, separate trials for the issues of liability can be appropriate when the proof of damages is complicated and costly. *Id.* Here, it is apparent that several preliminary issues, such as whether the Selbys purchased securities from Worthington Bank or Bancshares and whether the Kirchoffs acted fraudulently in selling Worthington Bank stock, will have an impact on later determinations, such as the availability of certain remedies. Under these circumstances, we believe that the trial court and the parties could alleviate the jury's burden by separating some of the issues and trying them separately.