**Horst KARL, Appellant–Defendant,**

**v.**

**Bridgett STEIN, Appellee–Plaintiff.**

**No. 71A04–0004–CV–173.**

Court of Appeals of Indiana.

May 30, 2001.

Rehearing Denied July 16, 2001.

---

Robert J. Palmer, May, Oberfell & Lorber, South Bend, IN, Attorney for Appellant.

Jeffrey J. Stesiak, Douglas E. Sakaguchi, Sweeney, Pfeifer, Morgan & Stesiak, South Bend, IN, Attorneys for Appellee.

## OPINION

SULLIVAN, Judge.

Appellant-defendant, Horst Karl, appeals the trial court's order setting aside a jury verdict for the appellee-plaintiff, Bridgett Stein, and granting her a new trial to determine the proper amount of damages.

Upon appeal, Karl presents three issues which we restate as follows:

(1) Whether the trial court entered adequate findings under Ind.Trial Rule 59(J); and

(2) Whether the trial court abused its discretion by granting Stein's motion to correct error and ordering a new trial upon the issue of damages.

We reverse.

On July 3, 1996, Karl's vehicle rear-ended Bridgett Stein's vehicle which was stopped at an intersection for a traffic light. Immediately after the collision, Stein was able to get out of the car and was transported to a hospital emergency room. During her examination, Stein complained of pain in her lower back, left shoulder, head, and neck. Based upon her complaints, x-rays were taken of Stein's cervical spine,[1] lumbar spine[2] and scapula.[3] After reviewing the films, the emergency room physician found that they "were unremarkable for fracture or dislocation." Plaintiff's Exhibit 1, Tab A at 6. Stein was diagnosed with an "[a]cute cervical lumbar strain, secondary to motor vehicle accident,"[4] given pain medication and released. Plaintiff's Exhibit 1, Tab A at 6. Stein was also instructed to follow up with Dr. Cardenas, her family physician, as needed. Stein incurred expenses in the amount of $672.25 for the services provided at the emergency room and $132.87 for radiology fees, for a total of $805.12.

---

1. Cervical means "[t]rachelian; relating to a neck, or cervix, in any sense." STEDMAN'S MEDICAL DICTIONARY 280 (25th ed.1990).

2. Lumbar is defined as "[r]elating to the loins, or the part of the back and sides between the ribs and the pelvis." STEDMAN'S MEDICAL DICTIONARY 896 (25th ed.1990).

3. A scapula is a "[s]houlder blade; blade bone; a large triangular flattened bone lying over the ribs, posteriorly on either side, articulating laterally with the clavicle and the humerus." STEDMAN'S MEDICAL DICTIONARY 1386 (25th ed.1990).

4. The quoted diagnosis did not contain the word "and" between the words "cervical lumbar." The record reflects that x-rays were taken of both areas.

On July 5, 1996, Stein visited Dr. Brian Jacobs who was temporarily seeing Dr. Cardenas's patients. Dr. Jacobs' notes reveal that during her visit Stein complained of "neck pain and tingling·in both hands." Plaintiff's Exhibit 1, Tab B. At trial, however, Stein testified that her "entire back . . . from the lower back all the way up to [her] neck," her leg, and knee were sore. Record at 157. During Dr. Jacobs' examination of Stein, he noted tingling in Stein's hands, but found Stein's "upper extremity strength, shoulder motion, neck range of motion, [and] tenderness all within normal limits." Plaintiff's Exhibit 1, Tab B. Dr. Jacobs concluded that Stein had a cervical strain and recommended that Stein undergo physical therapy.

On July 15, 1996, Stein visited Dr. Cardenas for a follow-up appointment. According to Dr. Cardenas's notes, Stein was still experiencing pain in her neck and back and numbness and tingling in her right arm and hand. Stein continued physical therapy and had an MRI of her cervical spine taken. Neither the emergency room physician nor Stein's family physicians, who examined her soon after the accident, recorded any complaints by Stein concerning knee pain.

In August 1996, Stein was referred to neurologist Dr. Kevin Kristl who checked for possible nerve damage in her neck, arm, and left leg. Dr. Kristl found no signs of nerve damage and noted that Stein's MRI scan of the lumbar spine [5] was negative. In his letter to Dr. Cardenas, Dr. Kristl did note, however, that an "EMG done in 1990 . . . show[ed] bilateral carpal tunnel syndrome." Plaintiff's Exhibit 1, Tab B. Stein admitted this diagnosis at trial and further admitted that she had surgery to alleviate numbness and tingling in her hands. Stein also admitted

that approximately six months after the surgery the numbness and tingling returned and "bothered [her] off and on" and that in 1995 she was diagnosed with recurrent carpal tunnel syndrome. Record at 181–82.

On November 5, 1996, Stein saw an orthopedic surgeon, Dr. Bankoff, for knee pain. Because Stein continued to experience pain in her knee, Dr. Bankoff decided to perform surgery on Stein's knee on July 16, 1997. Dr. Bankoff found a tear on the lateral cartilage, which he repaired. At trial, Stein denied having fallen on her knee or experiencing any other trauma to her knee. Stein admitted, however, that in October 1996 when she was descending the stairs outside her house, her knee gave out, causing her to fall. Stein stressed that she did not fall on her knee and further stressed that she was not climbing the stairs, contrary to her deposition testimony. When asked to explain her prior deposition testimony wherein she stated that she fell while ascending the stairs, she simply explained that her deposition testimony was wrong.

On December 16, 1997, nearly eighteen months after the accident, Stein again saw Dr. Cardenas for pain she was experiencing in her neck. In her notes, Dr. Cardenas indicated that Stein had experienced "some bulging of a disk" in her neck several years ago and that it was "possible it is getting worse now after the accident." Plaintiff's Exhibit 1, Tab B.

On May 15, 1997, Stein filed a lawsuit against Karl, alleging that Karl's negligent operation of his vehicle was the proximate cause of her injuries. Stein sought damages for hospital, doctor and medical expenses totaling $12,975.87, lost

---

**5.** It is unclear whether MRI scans were taken of both the cervical and lumbar areas or whether Dr. Kristl's "lumbar" reference was a scrivener's error.

wages totaling approximately $2,900.00 [6] and an undetermined amount for pain and suffering. In his answer to the complaint, Karl claimed that immediately before the accident, he was faced with a sudden emergency when his brakes failed and, therefore, was not responsible for Stein's injuries.

During a jury trial on October 18, 1999, Karl presented his sudden emergency defense and also attempted to show that the medical problems Stein complained of after the accident were not the result of the collision. In particular, Karl presented evidence that one week before the accident Stein had visited Dr. Cardenas for pain she was experiencing in her shoulder, chest, ribs and back. Karl also attempted to show that the injury to Stein's knee was caused by a fall subsequent to the accident and that the pain and numbness in her hands and arms were attributable to carpal tunnel syndrome. Ultimately, Stein conceded that Karl was not "in any way responsible for any carpal tunnel problems...." Record at 188. However, Stein continued to allege that her remaining medical conditions were caused by the collision.

At the close of the evidence, the jury was instructed that if it found Karl negligent, it could award Stein "only such damages as [would] fairly and adequately compensate for such injury and damages as you find, from a preponderance of the evidence, that have been sustained as a direct result of the accident." Record at 78. The jury was also instructed that it could not engage in speculation concerning the amount of damages but had to ensure that the evidence provided a "reasonably certain basis from which [it] may find the plaintiff's actual loss." Record at 78.

With regard to pain and suffering, the jury was instructed to arrive at an amount "which [would] fairly compensate the plaintiff for the damages she had suffered." Record at 80. The jury was further instructed that "[t]here is no exact standard for fixing the compensation to be awarded on account of such elements of damages" and that the award should be "fair and just in light of the evidence." Record at 80.

Sometime during deliberations, the jury sent the trial court a note, informing the court that while all of the jurors agreed that Stein had not proven her allegations, they were unable to enter a verdict in favor of Karl because they did not believe his brakes were faulty. The court instructed the jury to continue deliberating and to attempt to decide the case based upon the instructions and evidence. Thereafter, the jury returned its verdict for Stein in the amount of $500.00.

Believing the jury verdict to be inadequate, Stein filed a motion to correct error, claiming that her damages greatly exceeded the $500.00 award. According to Stein, "[w]hile there was some dispute as to whether the knee surgery was caused by the accident, it was undisputed that other injuries were in fact caused from the accident." Record at 110. In the alternative, Stein alleged that considering that the jury found neither party's case compelling, the jury had arrived at a compromised verdict. Stein asked the court to enter judgment on the evidence for the proper amount, to grant a new trial or to grant a new trial subject to additur. Karl opposed Stein's motion, asserting that the verdict was reasonable because the evidence showed that the accident did not cause most of Stein's injuries.

---

**6.** Stein presented a letter from her company's personnel director, who indicated that Stein earned $345.00 weekly for a forty-hour week and missed work from July 5, 1996, through July 26, 1996, and again from August 20, 1996, through September 27, 1996.

Following a hearing, the trial court granted Stein's motion to correct error under T.R. 59(J) and ordered a new trial on the issue of damages only. Karl responded by filing his own motion to correct error in which he contended that if a new trial were granted, the jury should be permitted to reconsider both liability and damages. That motion to correct error was denied and Karl appeals.

## I.

*Adequacy of the Trial Court's Findings under Ind.Trial Rule 59(J)(7)*

First, Karl claims that the trial court did not enter adequate findings under T.R. 59(J). That rule provides as follows:

**"(J) Relief granted on motion to correct error.**

The court, if it determines that prejudicial or harmful error has been committed, shall take such action as will cure the error, including without limitation the following with respect to all or some of the parties and all or some of the errors:

(1) Grant a new trial;

(2) Enter final judgment;

(3) Alter, amend, modify or correct judgment;

(4) Amend or correct the findings or judgment as provided in Rule 52(B);

(5) In the case of excessive or inadequate damages, enter final judgment on the evidence for the amount of the proper damages, grant a new trial, or grant a new trial subject to additur or remittitur;

(6) Grant any other appropriate relief, or make relief subject to condition; or

(7) In reviewing the evidence, the court shall grant a new trial if it determines that the verdict of a non-advisory jury is against the weight of the evidence; and shall enter judgment, subject to the provisions herein, if the court determines that the verdict of a non-advisory jury is clearly erroneous as contrary to or not supported by the evidence, or if the court determines that the findings and judgment upon issues tried without a jury or with an advisory jury are against the weight of the evidence.

In its order correcting error the court shall direct final judgment to be entered or shall correct the error without a new trial unless such relief is shown to be impracticable or unfair to any of the parties or is otherwise improper; and if a new trial is required it shall be limited only to those parties and issues affected by the error unless such relief is shown to be impracticable or unfair. If corrective relief is granted, the court shall specify the general reasons therefore. *When a new trial is granted because the verdict, findings or judgment do not accord with the evidence, the court shall make special findings of fact upon each material issue or element of the claim or defense upon which a new trial is granted. Such finding shall indicate whether the decision is against the weight of the evidence or whether it is clearly erroneous as contrary to or not supported by the evidence; if the decision is found to be against the weight of the evidence, the findings shall relate the supporting and opposing evidence to each issue upon which a new trial is granted; if the decision is found to be clearly erroneous as contrary to or not supported by the evidence, the findings shall show why judgment was not entered upon the evidence."* T.R. 59(J)(7) (emphasis supplied).

As the rule requires, a trial court must enter findings of fact if the trial court determines that the jury verdict does not accord with the evidence. *Read v. Malone,* 176 Ind.App. 497, 501, 376 N.E.2d 494, 497 (1978); *Hunter v. Byrd,* 602 N.E.2d 1052, 1054 (Ind.Ct.App.1992), *trans. denied.* The type of findings which must be made, however, depends upon whether the court concludes that the verdict is against the weight of the evidence or clearly erroneous. *Malacina v. Malacina,* 616 N.E.2d 1061, 1063 (Ind.Ct.App. 1993). If the court determines the verdict is against the weight of the evidence, the trial court must include the supporting and opposing evidence on each issue upon which a new trial is granted. *Read,* 176 Ind.App. at 501–502, 376 N.E.2d at 497. If the court concludes that the decision is clearly erroneous, the trial court should make evident why judgment was not entered upon the evidence. *Id.* "The purpose of the requirements [of T.R. 59(J)(7) ] is to provide the parties and the reviewing court with the theory of the trial court's decision." *Malacina,* 616 N.E.2d at 1063.

In this case, the trial court made the following findings:

"Pursuant to Trial Rule 59(J)(7), the Court concludes that the jury's verdict for the Plaintiff in the amount of $500.00 is against the weight of the evidence on the issue of the Plaintiff's damages.

The Court hereby enters the following findings of fact:

1. The evidence was undisputed that the Stein vehicle was stopped awaiting the traffic light to turn green from red.

2. Mr. Karl's vehicle struck the rear of the Stein vehicle while the Stein vehicle was stopped.

3. Mr. Karl claimed that his brakes failed and that the defense of sudden emergency should absolve him of any responsibility for the accident with Ms. Stein.

4. It is obvious that the jury found that the defense of sudden emergency did not apply to the case when they found for the Plaintiff and against the Defendant.

Concerning the Plaintiff's damages, the following *uncontradicted evidence* was presented to the jury:

1. That Bridgett Stein complained of pain at the scene of the accident;

2. That Bridgett Stein was taken from the scene of the accident to South Bend Memorial Hospital where she was treated for the injuries she sustained in the accident with Mr. Karl.

3. That emergency room doctor diagnosed Ms. Stein's injuries as an acute cervical strain, secondary to motor vehicle accident.

4. That Ms. Stein incurred $672.25 for medical services provided at South Bend Memorial Hospital.

As recited above, *the nature and extent of the Plaintiff's injuries, at least the initial treatment at the hospital following the accident were not in dispute.* Additionally, the medical bills incurred at South Bend Memorial Hospital in the amount of $672.25 *were not disputed* by Mr. Karl. Thus, it is clear that the jury's verdict in the amount of $500.00 is *against the weight of the evidence.* Furthermore, since there was a finding for the Plaintiff, the issue of liability has been determined and thus there is no need to re-litigate that issue.

Accordingly, a new trial on damages is necessary. Pursuant to Trial Rule 59 the Court vacates the Judgment entered on October 19, 1999 pursuant to Trial Rule 58 for the Plaintiff in the amount

[of] $500.00, and orders a new trial on the issue of the Plaintiff's damages only." Record at 119–21 (emphasis supplied).

Karl acknowledges that the trial court obviously concluded that the evidence concerning Stein's emergency room injuries and expenses was undisputed. However, Karl challenges this conclusion, asserting that there was evidence that "not all of the expenses incurred at the emergency room were necessarily attributable to the accident." Appellant's Reply Brief at 2. As such, Karl claims that both the evidence opposing and supporting the jury's verdict should have been set forth by the trial court in its findings.

■ We agree with Karl's observation that, despite the trial court's stated rationale that the jury verdict was against the weight of the evidence, it obviously concluded, based upon its determination that Stein's emergency room expenses were undisputed, that the jury verdict was clearly erroneous. When it is apparent that a court has concluded that a jury verdict is clearly erroneous, despite its stated rationale, findings setting forth opposing and supporting evidence are not required. See Keith v. Mendus, 661 N.E.2d 26, 31–32 (Ind.Ct.App.1996) (concluding that the trial court's statements that there was a "complete lack of evidence" and the jury's verdict was "not warranted by the evidence," revealed the court's belief that the jury verdict was clearly erroneous rather than against the weight of the evidence, and therefore, trial court was not required to set forth supporting and opposing evidence), trans. denied.

Moreover, we disagree with Karl's assertion that the findings are inadequate because in his opinion there is evidence supporting the jury's verdict. Karl correctly notes that a trial court which concludes a jury verdict is against the weight of the evidence is required to set forth supporting and opposing evidence. See Burell v. Riggs, 557 N.E.2d 698, 700 (Ind. Ct.App.1990) (noting that to the extent the trial court intended to set aside a jury verdict because it was against the weight of the evidence, the trial court was required to set forth both opposing and supporting evidence), trans. denied. Such a requirement exists to allow the trial court, acting as a thirteenth juror, to demonstrate why the conflicting evidence preponderates in favor of the losing party. Dughaish ex rel. Dughaish v. Cobb, 729 N.E.2d 159, 169 (Ind.Ct.App.2000), trans. denied. In this case, however, it is clear that the trial court set aside the jury verdict, not because the verdict was against the weight of the evidence, but because the verdict was clearly erroneous. Thus, we find Karl's argument to be, in essence, a challenge to the court's conclusion, not the adequacy of the findings. See Appellant's Reply Brief at 1 ("If such evidence [supporting the jury's verdict] exists, the trial court's finding that the medical bills incurred at Memorial Hospital were not disputed is erroneous. . . ."). Given the trial court's obvious conclusion that the verdict was clearly erroneous, it was not required to set forth supporting and opposing evidence.[7]

## II.

### Propriety of Granting a New Trial

Karl contends that the trial court erroneously concluded that Stein was entitled to a new trial because the jury could have concluded that most of Stein's injuries, including some of the injuries resulting in emergency room treatment, were not caused by the rear-end collision. In par-

7. Karl does not otherwise contest the trial court's findings.

ticular, Karl points out that the jury was presented with evidence that Stein had complained of shoulder and back pain just one week before the accident, had pre-existing problems with her neck and tingling and numbness in her hands, and fell on her knee approximately two months after the accident. Thus, Karl contends that the jury award was reasonable and was based upon the evidence.

The trial court's decision to grant a new trial carries a strong presumption of correctness. *Barnard v. Himes,* 719 N.E.2d 862, 865 (Ind.Ct.App.1999), *trans. denied.* In reviewing that decision, the appellate court's sole duty is to examine the record to determine whether: (1) the trial court abused its discretion; (2) a flagrant injustice occurred; or (3) the appellant has made a strong case for relief from the trial court's order. *Id.* "An abuse of discretion will be found when the trial court's action is against the logic and effect of facts and circumstances before it and the inferences which may be drawn therefrom." *Id.*

In support of his contention that the trial court erred, Karl relies upon this court's decision in *Conklin v. Demastus,* 574 N.E.2d 935 (Ind.Ct.App.1991). There, the plaintiff brought a personal injury action against a driver who rear-ended the plaintiff's vehicle at an intersection. The impact from the collision caused the plaintiff's head and chest to hit the steering wheel and his arm to hit the dashboard. Each car was damaged only slightly and neither car was towed. While the plaintiff did not complain of injuries at the scene of the accident, the following day the plaintiff visited his doctor, complaining of numbness and pain in his right hand and arm and pain in his chest. X-rays revealed that a pre-existing arthritic condition in the plaintiff's arm and hand had become worse.

As the plaintiff's condition did not improve with physical therapy, he consulted an orthopedic surgeon for his hand and arm injuries. The surgeon concluded that the plaintiff was suffering from a sensory loss and paralysis of the radial nerve in his right arm, and tests revealed that the plaintiff had an acute lesion of the radial nerve. The plaintiff also developed a loss of feeling in his hip and legs and weakness and spasms in the muscles of his left leg.

Believing his medical problems had been caused by the rear-end collision, the plaintiff filed a negligence action against the defendant. The defendant denied negligence on his part and further claimed that the accident was not the proximate cause of the plaintiff's injuries. At trial, the defendant presented evidence that the plaintiff had a substantial medical history. The defendant also submitted evidence that the plaintiff had injured his elbow and arm in accidents subsequent to the rear-end collision.

In closing argument, defense counsel conceded liability on the part of the defendant but adamantly argued that the defendant did not cause the plaintiff's injuries. After the jury returned a verdict in favor of the defendant, the plaintiff filed a motion to correct error and a motion for judgment on the evidence to have the jury verdict set aside. The trial court agreed and ordered a new trial pursuant to T.R. 59(J)(7).

Upon appeal, the defendant contended that the trial court abused its discretion in granting a new trial ·because the evidence at trial supported the jury's verdict. We agreed, noting that a jury could have concluded that the plaintiff's injuries had not been caused by the collision. *Id.* at 940. In particular, we noted that the jury could have properly considered the plaintiff's lengthy medical history, his credibility as a

witness, evidence that the automobiles sustained only minor damage, and that the plaintiff did not complain of injuries at the scene of the accident. *Id.*

While it appears that in this case the impact from the collision was more severe than the one in *Conklin*, the evidence reveals that Stein was able to exit the vehicle without the assistance of medical personnel. In addition, while Stein did complain of pain immediately following the accident, she had been experiencing some similar pain just prior to the accident. Moreover, of the injuries Stein alleged were caused by the accident, only some of them were reported to the emergency room physician immediately following the accident. Thus, we must conclude, as did the court in *Conklin*, that there was substantial evidence from which the jury could have concluded that many of Stein's medical conditions, including some of the injuries she reported to the emergency room physician, were not caused by the rear-end collision.

First, there was ample evidence from which the jury could have concluded that Stein's knee injury was not caused by the accident. Evidence at trial reflected that a few months following the accident, Stein fell while ascending the stairs to her house but did not report this to Dr. Bankoff. There was also evidence presented that the type of knee injury Stein sustained normally occurs when weight is placed on the knee, could be caused by falling on the knee and would more likely be the result of a fall rather than a knee hitting the dashboard of a car. Both Dr. Gabriel, who examined Stein prior to trial, and Dr. Bankoff testified that they would have expected to see symptoms such as pain and limping immediately after the accident had the accident caused Stein's knee injury; however, neither the emergency room physician's report nor the notes from Stein's July 5 and July 15 appointments included any complaints of knee pain. Finally, Dr. Bankoff conceded that the symptoms indicative of the tear in Stein's knee did not become apparent until nearly eleven months after the accident.

With regard to Stein's complaints of pain, tingling and numbness in her arms and hands, Stein conceded that to the extent these symptoms were related to carpal tunnel syndrome, they were not caused by the accident. Moreover, to the extent Stein was attempting to prove that any other pain in her hands and arms was caused by the accident, the jury could have concluded that the symptoms were related to her carpal tunnel syndrome. The jury heard evidence that several years before the accident, Stein had been diagnosed with carpal tunnel syndrome which includes symptoms such as "[t]ingling and numbness in the thumb, index, middle, and part of the ring finger, and weakness of the grip." Dr. Gabriel's Deposition at 27–28. The jury also heard evidence that Stein had surgery for the carpal tunnel syndrome and after experiencing pain, numbness and tingling in 1995, was diagnosed with "[e]arly recurrent carpal tunnel syndrome." Dr. Gabriel's Deposition at 29.

The jury also could have concluded that some of the injuries Stein reported to the emergency room physician were not caused by the rear-end collision. It is true that the jury heard evidence that Stein complained of shoulder, back, and neck pain immediately following the accident, was transported to the emergency room and incurred a total of $805.12 for x-rays, radiology fees, pain medication, processing fees and emergency services. To be sure, in many cases a plaintiff's emergency room expenses will be undisputed. *See Sherman v. Kluba,* 734 N.E.2d 701 (Ind.Ct. App.2000) (finding trial court's order

granting new trial proper where plaintiff/pedestrian's medical expenses for treatment following accident were undisputed), *trans. denied; Manzo v. Estep,* 689 N.E.2d 474 (Ind.Ct.App.1997) (concluding that plaintiff, who brought action to recover for injuries allegedly sustained in rear-end collision, was entitled to a new trial where expenses for treatment immediately following accident were undisputed, but jury awarded plaintiff no damages); *Brown v. Conrad,* 531 N.E.2d 1190 (Ind. Ct.App.1988) (upholding trial court's order granting plaintiff new trial because the jury's award of no damages was clearly erroneous where uncontradicted evidence showed that plaintiff was entitled to at least emergency room expenses), *trans. denied; Burris v. Riester,* 506 N.E.2d 484 (Ind.Ct.App.1987) (concluding that jury verdict was inadequate and new trial was required because victim's expenses immediately following automobile collision were undisputed), *trans. denied; Oliver v. Morrison,* 431 N.E.2d 140 (Ind.Ct.App.1982) (holding that plaintiff, who sustained injuries in automobile collision, was entitled, at a minimum, to some damages where uncontradicted evidence revealed that immediately following the accident plaintiff complained of injuries, including injury to the left knee, was taken to the hospital and two days later exhibited swelling in the left knee), *trans. denied; Read, supra,* 176 Ind.App. 497, 376 N.E.2d 494 (affirming trial court's decision to grant plaintiff a new trial on plaintiff's negligence claim where evidence revealed that immediately following automobile accident, plaintiff was transported by ambulance to the emergency room where he received treatment for a severe scalp laceration and concussion and was admitted to the hospital for five days).

However, in this case, the jury heard evidence that just one week before the accident, Stein had visited her family physician, Dr. Cardenas, complaining of pain in her shoulder, chest, ribs and back. Dr. Cardenas's notes from that appointment reveal that Stein admitted that she had been "doing a lot of yard work about 2 days before the pain started." Plaintiff's Exhibit 1, Tab C. Dr. Cardenas's notes also indicate that Stein might have been suffering from bursitis, tendonitis, or brachial plexus problem. Dr. Gabriel, who conducted an independent physical examination of Stein before trial and who reviewed Dr. Cardenas's notes, interpreted Dr. Cardenas's findings to mean that Stein "might have had problems with the left shoulder, chest, ribs, and back pain" prior to the accident and that the medical conditions Dr. Cardenas noted might have been the cause of Stein's shoulder pain. Dr. Gabriel's Deposition at 15–17. Stein herself admitted having seen Dr. Cardenas one week before trial and further testified that she remembered that Dr. Cardenas believed Stein had strained her muscles while doing yard work in the heat. Record at 162–63.

The jury also heard evidence from Dr. Gabriel concerning the difference between a patient's subjective complaints and a doctor's objective findings and their reliability in diagnosing a patient's condition. Dr. Gabriel explained that an objective finding is something which a doctor can actually feel or see in an x-ray and that a subjective finding is something which a patient feels such as pain, but which cannot be verified. According to Dr. Gabriel, with regard to Stein's back and neck pain, he could not make any objective findings.

Thus, considering the evidence and the final instructions, the jury could have properly concluded that Stein's knee injury had been caused by a subsequent fall and that her hand and arm pain was caused by carpal tunnel syndrome. The jury also could have concluded that while Stein would not have visited the emergency

room had the accident not occurred, the shoulder and back pain of which Stein complained were not caused by the accident but a pre-existing medical condition and/or overexertion of her muscles one week before the accident. *See Wickizer v. Medley,* 169 Ind.App. 332, 336, 348 N.E.2d 96, 98 (1976) (finding that evidence revealed that subjective complaints of plaintiff, who allegedly suffered injuries in rearend collision, might have been caused by medical condition and not accident), *trans. denied. See also Niemeyer v. Lee,* 144 Ind.App. 161, 172, 245 N.E.2d 178, 185 (1969) (noting that the sincerity of a plaintiff's complaints does not establish that a medical condition exists or that it was caused by the defendant's negligence). Because the neck pain was the only symptom not present immediately before the accident, a reasonable jury could have decided not to award Stein for any emergency room expenses except for those relating to the cervical strain.

■ The jury also could have determined that the neck strain Stein sustained in the accident did not entitle her to a substantial award for pain and suffering in that any continuing neck pain was caused by a pre-existing condition. The record reveals that in 1990 an MRI was taken of Stein's cervical spine and indicated a slight bulging of the C5–6 disc. Another MRI of Stein's cervical spine was taken about three weeks after the accident and revealed the same "[m]inimal bulging of C5–6 disc." Dr. Gabriel's Deposition at 18. Finally, in December 1997, Stein had another cervical spine MRI done which revealed the same findings as the July 1996 report. Dr. Gabriel revealed the MRI findings to the jury and informed the jury that during his examination of Stein he found "no deformity of [Stein's] neck," that the range of movement was normal, and that there was no muscle spasm or tender-

ness. Dr. Gabriel's Deposition at 8–9. Dr. Gabriel further concluded that, in his opinion, Stein had recovered completely from her cervical strain. Finally, Stein herself testified that while she still experiences some neck pain, it does not prevent her from engaging in any activity which she was able to do before the accident. Record at 175. Stein further admitted on cross-examination that the injuries she believed were caused by the accident "do not currently affect [her] physical activities in any way." Record at 185–86. Attributing Stein's continuing neck pain to the pre-existing bulging disk, the jury could have concluded that Stein was entitled to only a minimal award for pain and suffering for the cervical strain diagnosed at the emergency room. *See Baker v. Champion Motor Home Co., Inc.,* 505 N.E.2d 144, 150 (Ind.Ct.App.1987) (noting that in a personal injury action, a jury may infer that a plaintiff's pain and suffering were caused by a condition other than the accident and that under certain circumstances nominal damages awarded for pain and suffering are appropriate), *trans. denied.*

■ Finally, the jury could have concluded that Stein was not entitled to lost wages. The evidence revealed that Stein had been absent from work three weeks immediately following the accident and an additional five weeks from late August through September 1996. However, the jury was instructed that it could award Stein only for the value of lost earnings that "resulted from the negligence and wrongful conduct of the defendant." Record at 75. If the jury believed that Stein had suffered only a minor neck strain, it could have concluded that she was not entitled to lost wages for the eight-week leave from work. *See Cox v. Winklepleck,* 149 Ind.App. 319, 322–23, 271 N.E.2d 737, 739 (1971) (concluding that it was within the jury's prerogative to determine wheth-

er time plaintiff was absent from work or a portion thereof was caused by the automobile collision).

■ When there is evidence supporting the jury's verdict, the trial court is not permitted to set aside a jury verdict as clearly erroneous and order a new trial. *See Burell,* 557 N.E.2d at 701–702 ("A verdict is not clearly erroneous if there is relevant evidence supporting the claim, albeit conflicting.").[8] Because there is evidence from which the jury could have concluded that most of Stein's injuries were not caused by the accident,[9] we must conclude that the trial court abused its discretion in granting a new trial on the basis that the jury verdict was clearly erroneous. We reverse and remand for reinstatement of the jury verdict.

The costs of appeal are hereby assessed against appellee.

SHARPNACK, C.J., and MATHIAS, J., concur.

---

8. We note that while the trial court had authority to set aside the jury verdict on the ground that the verdict was against the weight of the evidence, it did not do so. Therefore, because the trial court did not set forth supporting and opposing evidence, explaining why the evidence preponderated in favor of the plaintiff, we may not review the court's decision upon that ground. *See Burell,* 557 N.E.2d at 702.

9. Assuming the jury found that only Stein's cervical strain was caused by the accident and awarded Stein a nominal amount for pain and suffering, it could have determined that $500.00 was a proper damage award. As a result of the emergency room visit, Stein incurred the following costs: (1) $15.25 for pharmacy; (2) $219.00 for emergency services; (3) $65.00 for a processing fee; and (4) $373.00 for the x-rays. Stein also was billed by radiology in the following amounts for the x-rays taken at the hospital: (1) $52.04 for the cervical spine x-ray; (2) $52.04 for the lumbar spine x-ray; and (3) $28.79 for the scapula x-ray. The costs for pharmacy, emergency services, the processing fee, one-third of the total for the emergency room x-rays and the cervical spine x-ray total $475.62.