**NATURE'S LINK, INC., Appellant–
Defendant,**

v.

**Thomas PRZYBYLA and Amy
Przybyla, Appellees–
Plaintiffs.**

**No. 53A01–0706–CV–286.**

Court of Appeals of Indiana.

May 7, 2008.

Steven D. Groth, Carina M. De La Torre, Bose McKinney & Evans, LLP, Indianapolis, IN, Attorneys for Appellant.

Mark C. Ladendorf, Daniel A. Ladendorf, Amy Van Ostrand–Fakehany, Ladendorf & Ladendorf, Indianapolis, IN, Attorneys for Appellees.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, Nature's Link, Inc. (Nature's Link), appeals the trial court's grant of a new trial to Appellees–Plaintiffs, Thomas and Amy Przybyla (Przybyla), after setting aside a jury verdict in Przybyla's favor but failing to award him any damages following his personal injury claim.[1]

We affirm.

---

1. We held oral argument in this matter on March 19, 2008 in the Supreme Court Court-room. We thank counsel for their excellent advocacy.

### ISSUE

Nature's Link raises two issues on appeal, one of which we find dispositive and which we restate as: Whether the trial court properly ordered a new trial pursuant to T.R. 60(B)(3) after finding that Nature's Link's medical expert changed his diagnosis and opinion of Przybyla's injuries at trial without having previously disclosed this new diagnosis to Przybyla.

### FACTS AND PROCEDURAL HISTORY

On January 25, 2004, at approximately 5 p.m., Przybyla, a Bloomington, Indiana police officer reported to the parking lot of the St. Charles Church in Bloomington in search of a suspicious vehicle. As he was twisting around to reach for his door handle to open his car door, Lester Anders (Anders), a Nature's Link's employee, who was plowing snow in the parking lot, backed his Ford pick-up truck with attached snow blade into the rear passenger side of Przybyla's squad car. The combined weight of the truck and snow blade was approximately 6,500 pounds.

According to Anders, the impact occurred after he hit the brakes and was almost at a complete stop. However, as a result of the accident, Przybyla's glasses were knocked off his head, and his car was moved sideways. He stated he was "stunned," "shocked," and "shaken up" following the collision. (Transcript pp. 421, 430). Immediately after the collision, Officer Stephanie Barnes (Officer Barnes) arrived to investigate and Przybyla informed her he had a headache and felt tingling in his head and back. When Sergeant Jeffrey Canada arrived at the scene, he observed heavy damage to Przybyla's squad car. Przybyla told him that he was "shaken up," but was "gonna try to suck it up." (Tr. p. 430). Later that evening, Przyby-

la's pain in his head and upper back started to intensify and he drove himself to the emergency room. After x-rays indicated that he did not suffer any breaks or fractures, he was released with pain medication prescriptions, a soft collar, and instructions to see his physician.

The next day, Przybyla followed up with Dr. Erich Weidenbener (Dr. Weidenbener), a physician who provides treatment to Bloomington City employees with Worker's Compensation claims. Przybyla complained of neck and shoulder pain. On February 6, 2004, twelve days after the accident, Przybyla visited Dr. Weidenbener reporting lower back pain. Thereafter, on February 24, 2004, Przybyla saw Dr. Weidenbener again, to discuss pain in his knee. He was eventually diagnosed with a tear of the meniscus, which Dr. Gregory Fox repaired through arthroscopic surgery on April 7, 2004.

On June 9, 2004, Dr. Weidenbener sent Przybyla for an MRI of his spine, which revealed narrowing at the L5 S1 nerve root foramen, and a pinching of the root. Comparing the MRI to an MRI performed previously on October 3, 2000, Dr. Weidenbener determined the injuries were new. Eventually, he found Przybyla to be occupationally disabled based on the injuries to his lower back suffered as a result of the January 25, 2004 collision.

On September 23, 2005, Przybyla filed his Complaint alleging personal injuries due to Nature's Link's negligence. He based his claim on the aggravation of his preexisting degenerative disk disease. On March 13 through March 15, 2007 a jury trial was held. At trial, both parties stipulated to Przybyla's pre-existing degenerative disk disease. Dr. Weidenbener testified that, while Przybyla suffered from a pre-existing condition, his injuries from the 2004 collision aggravated his condition, causing him a permanent impairment rat-

ing of 8%, forced him to receive $21,389.54 in reasonable and necessary medical care, and rendered him occupationally disabled from further service as a police officer. Although Dr. Weidenbener admitted during Nature Link's cross-examination that he was unaware of Przybyla's pre-existing neck problems, he clarified that Przybyla's neck pain had nothing to do with the injuries underlying the assigned permanent impairment rating.

Nature's Link's expert physician, Dr. Arthur Lorber (Dr. Lorber) submitted his written report approximately five weeks prior to trial and revised his report less than two weeks before the scheduled trial date. Deposed by Przybyla's counsel less than two weeks before trial, Dr. Lorber confirmed that his revised report contained all of his opinions concerning Przybyla's medical condition. Most notably, he concluded that Przybyla's back pain was, in large part, the result of prior automobile collisions in 2000 and 2001, and a fall in 2001.

During the second day of trial, after Przybyla had completed his case-in-chief, Dr. Lorber testified. While initially accepting the impairment rating assigned by Dr. Weidenbener, he qualified his statement by adding that most if not all of the permanent impairment rating should be attributed to his pre-existing degenerative disk disease. He described the degenerative disk disease that Przybyla demonstrated prior to the current accident and diagnosed it, for the first time, as Scheuermann's Juvenile Idiopathic Disk Disease (SJIDD), a hereditary disease that leads to premature disk degeneration. Dr. Lorber added that, in his opinion, SJIDD is the primary cause of Przybyla's back pain. Przybyla did not object to this line of questioning.

During cross-examination, Dr. Lorber admitted that, prior to his testimony in

court, he had never identified the specific disease pathology of SJIDD, either in his written report or in his deposition testimony. He clarified that he had only reached this particular diagnosis a couple of days after being deposed and prior to trial, after reviewing Przybyla's MRI's.

On March 15, 2007, at the close of the evidence, the jury entered a verdict assessing fault between Przybyla and Nature's Link at fifty percent each, and awarding zero dollars in damages. Thereafter, on April 16, 2007, Przybyla filed a Motion for a New Trial and Memorandum in Support thereof. On April 24, 2007, Nature's Link filed its Statement in Opposition to Przybyla's Motion for a New Trial. On April 30, 2007, Nature's Link's counsel contacted Przybyla's treating physician, Dr. Weidenbener, *ex parte,* to follow-up on some medical issues from trial. When Nature's Link's counsel informed Dr. Weidenbener of Dr. Lorber's SJIDD diagnosis at trial, he expressed confidence in his own opinion and testimony. Subsequent to his conversation with Nature's Link's counsel, Dr. Weidenbener verified in an affidavit that, while he agrees that Przybyla suffers from SJIDD, "it was an unlikely factor in [Przybyla's] disability, as it was an incidental finding." (Appellant's App. p. 217).

On June 8, 2007, the trial court conducted a hearing on Przybyla's Motion for a New Trial. Approximately two weeks later, on June 16, 2008, the trial court issued its findings of fact and conclusions of law, ordering a new trial. In its Order, the trial court determined, in pertinent part, that

> II. *Dr. Lorber's assertion of a newly formed undisclosed medical diagnosis and opinion at trial requires a new trial under Trial Rule 60(B)(3). The facts are as follows:*
>
> A. Dr. Lorber advanced a new medical diagnosis and opinion during the second day of trial, when he testified during defense counsel's direct examination that the primary cause of [Przybyla's] back pain is a hereditary disease called [SJIDD].
>
> B. Dr. Lorber did not make the SJIDD diagnosis or opinion until sometime during the twelve days prior to trial, after defense counsel delivered [Przybyla's] MRI films to him, following his March 1, 2007 deposition.
>
> C. On August 28, 2006, more than half a year before trial, [Przybyla] served an Interrogatory calling for a summary of "all opinions and conclusions reached by said expert in this case," along with a companion document request calling for any expert witness reports. Dr. Lorber produced a written report (on February 5, 2007), followed by a revised written report (on March 1, 2007), in response to this discovery. When Dr. Lorber offered his deposition testimony less than two (2) weeks prior to trial (on March 1, 2007), he testified the revised report contained all of his opinions concerning [Przybyla]. His opinion concerning SJIDD was never disclosed in discovery.
>
> D. [Przybyla's] expert witness and treating physician, Dr. Weidenbener, had testified before Dr. Lorber testified and was asked no questions about SJIDD by defense counsel and certainly none by [Przybyla's] counsel, who was unaware of Dr. Lorber's new diagnosis.
>
> E. There is no reference to SJIDD in any of the more than 500 pages of Przybyla's medical records that Dr. Lorber reviewed.
>
> F. Prior to trial, Dr. Lorber's opinions centered on pre-existing disk generation, but even he characterized SJIDD as a "new further definition of [Przybyla's] condition." Dr. Lorber's identification of SJIDD bolstered his previous

opinion, giving it a persuasive patina of reliability.

G. [Przybyla's] counsel did not interpose any objection or request a continuance when Dr. Lorber asserted the new diagnosis, but the trial was nearly over. Had an objection been interposed, [Nature's Link] suggests the [c]ourt could have merely stricken the new diagnosis to cure any error in earlier disclosure. Perhaps so in an easier case, but the crux of the damages part of this case was whether the damages were caused by this accident or whether they were simply the manifestation of earlier caused problems. Dr. Lorber's announcement of SJIDD was a "Eureka" type of moment which bolstered his earlier conclusions about multi-level disk degeneration unrelated to the accident. Given the lateness of the disclosure of the new and definitive diagnosis there was no curative action that would have preserved [Przybyla's] right to a fair trial. Though it may not translate well in a printed transcript, Dr. Lorber's announcement of a new diagnosis was a defining moment in the trial and one for which there was no fair way for [Przybyla] to fairly defend.

### Conclusions

The [c]ourt concludes that discovery obligations under Indiana Trial Rules 26(B)(1), 26(E) and 33(B) were breached. Dr. Lorber's new diagnosis could have been disclosed to [Przybyla's] [2] counsel earlier, th[e]n Dr. Lorber's direct trial testimony and should have been. Had the disclosure been made earlier, perhaps [Przybyla's] [3] counsel could have sought a continuance to consult with [Przybyla's] experts, to research SJIDD, to prepare a fair cross-examination of Dr. Lorber and his late diagnosis. To conclude that [Przybyla] waived any error by failing to object during Dr. Lorber's direct testimony would obliterate the promise of a fair trial and promote "trial by ambush."

The discovery violations constitute "misconduct" under Indiana Trial Rule 60(B)(3). An award of a new trial is appropriate when a party's breach of its discovery obligations prevents the other party from fairly presenting its case. *Outback Steakhouse of Fla., Inc. v. Markley,* 856 N.E.2d 65 (Ind.2006). An award of a new trial is required here.

(Appellant's App. pp. 10–11).

Nature's Link now appeals. Additional facts will be provided as necessary.

### DISCUSSION AND DECISION

■ Nature's Link contends that the trial court erred in setting aside the jury's verdict pursuant to Indiana Trial Rule 60(B)(3) and granting Przybyla a new trial. In essence, Nature's Link asserts that as Dr. Lorber's trial testimony did not deviate from his written reports, counsel did not have to disclose Dr. Lorber's SJIDD diagnosis to Przybyla and therefore did not commit misconduct. Furthermore, they assert that Przybyla did not satisfy

---

2. Although the trial court's Order states that "Dr. Lorber's new diagnosis could have been disclosed to *defense* counsel earlier," we believe, on the basis of the trial court's judgment, this should correctly read "Dr. Lorber's new diagnosis could have been disclosed to *plaintiff's* counsel earlier." (Appellant's App. p. 11).

3. Although the trial court's Order states that "Had the disclosure been made earlier, perhaps defense counsel could have sought a continuance to consult with [p]laintiff's experts ..." we believe, on the basis of the trial court's judgment, this should correctly read "Had the disclosure been made earlier, perhaps *plaintiff's* counsel ..." (Appellant's App. p. 11).

all requirements of T.R. 60(B)(3) as they failed to show a meritorious claim. In any event, Nature's Link maintains that Przybyla's assertions are not available for review as he failed to object to Dr. Lorber's trial testimony.

A trial court's decision to grant a new trial carries a strong presumption of correctness. *Karl v. Stein,* 749 N.E.2d 71, 79 (Ind.Ct.App.2001), *reh'g denied.* In reviewing that decision, the appellate court's sole duty is to examine the record to determine whether: (1) the trial court abused its discretion; (2) a flagrant injustice occurred; or (3) the appellant has made a strong case for relief from the trial court's order. *Id.* An abuse of discretion will be found when the trial court's action is against the logic and effect of facts and circumstances before it and the inferences which may be drawn therefrom. *Id.*

Here, the trial court granted Przybyla a new trial pursuant to Indiana Trial Rule 60(B)(3), which states in pertinent part

> On motion and upon such terms as are just the court may relieve a party or his legal representative from an entry of default, final order, or final judgment, . . ., for the following reasons:
>
> (3) fraud . . ., misrepresentation, or other misconduct of an adverse party;
>
> A movant filing a motion for reasons . . . (3), . . . must allege a meritorious claim or defense.

The evidentiary burden for a successful T.R. 60(B)(3) motion was recently explained in *Outback Steakhouse of Florida, Inc. v. Markley,* 856 N.E.2d 65 (Ind.2006). Trial Rule 60(B)(3) creates a limited exception to the general rule of finality of judgments, enabling a court to grant relief from an otherwise final judgment due to fraud, misrepresentation, or misconduct of an adverse party. *Id.* at 72. Thus, to prevail on his allegation of misconduct, Przybyla is required to show that: (1) Nature's Link committed misconduct; (2) the misconduct prevented Przybyla from fully and fairly presenting his case; and (3) Przybyla has made a *prima facie* showing of a meritorious claim. *Id.* at 74. In its analysis of the misconduct prong, our supreme court compared the element to its federal counterpart, and concluded that misconduct under T.R. 60(B)(3) requires either unintentional or intentional violations of Indiana's discovery rules. *Id.* at 73.

In support of their respective arguments, both parties rely on our supreme court's decision in *Outback Steakhouse of Florida, Inc. v. Markley,* 856 N.E.2d 65 (Ind.2006), the pivotal case with regard to misconduct resulting from discovery violations. In *Outback Steakhouse,* the court was confronted with Markley's response to Outback Steakhouse's discovery request which failed to identify a critical witness whose identity was known to Markley's counsel. *Id.* at 70. Markley sued Outback Steakhouse after an intoxicated patron collided with a motorcycle Markley was operating. *Id.* Among various claims, Markley advanced a Dram Shop Act claim, alleging Outback Steakhouse's employees knowingly served alcohol to a visibly intoxicated person. *Id.*

In 1999, counsel for Markley failed to list a key witness in his discovery responses, despite a defense interrogatory calling for a list of all witnesses with knowledge of the facts. *Id.* This witness originally stated that the driver was visibly intoxicated when she served him. *Id.* Later in 2001, Outback Steakhouse, in the presence of Markley's counsel, deposed the witness, who then testified that the driver was not visibly intoxicated. *Id.* at 71. During the trial in 2003, the witness was subpoenaed to testify for Outback Steakhouse. *Id.*

However, during the presentation of the Markley's case-in-chief, the witness contacted Markley's counsel and informed him that she had lied in her 2001 deposition and that she intended to testify at trial that the driver was visibly intoxicated when she served him. *Id.* Markley's counsel did not inform the trial court of this change in testimony and did not supplement his answers to Outback Steakhouse's interrogatory. *Id.* The next day, Markley's counsel called the witness to testify despite the fact that he had not listed her as one of their witnesses. *Id.* Outback Steakhouse did not object. *Id.* The witness testified that although the driver was visibly intoxicated, she continued serving him. *Id.* On cross-examination, Outback Steakhouse impeached her with her 2001 deposition. *Id.* However, she responded that she lied when she gave that deposition, that she was afraid and that she wanted to tell the truth at trial regardless of the consequences to her. *Id.* at 72. Outback Steakhouse did not ask the witness' testimony to be stricken or that a continuance be granted. *Id.* At the close of the evidence, the trial court, in line with the jury verdict, entered judgment against Outback Steakhouse in the amount of $39 million. *Id.*

Thereafter, Outback Steakhouse filed a motion for a new trial based on Ind. Trial Rule 60(B). *Id.* The trial court denied all post-trial relief and we affirmed the decision of the trial court. *Id.* Subsequently, our supreme court granted transfer. *Id.* On review, our supreme court concluded Markley's counsel breached discovery obligations set forth in Indiana Trial Rules 26 and 33 by failing to supplement his discovery responses. *Id.* at 73. The *Outback* court clarified that the duty to supplement discovery is ongoing during trial and does not simply cease at the outset of trial. *Id.* at 78. It held that Outback Steakhouse satisfied its burden for relief under T.R.60(B)(3) by establishing that (1) Markley's misconduct prevented Outback Steakhouse from fairly presenting its case at trial; and (2) Outback Steakhouse made a *prima facie* showing of a meritorious claim or defense. *Id.* at 80–81.

Here, the trial court granted Przybyla's motion for a new trial, concluding that Nature's Link committed discovery violations that rose to the level of misconduct under T.R.60(B)(3). Based on the evidence before us, we agree with the trial court.

In August of 2006, Przybyla served an interrogatory on Nature's Link which called for, in pertinent part, all opinions and conclusions reached by any expert in the case. In response, Nature's Link disclosed that Dr. Lorber would testify concerning "[Przybyla's] medical condition following the accident of January 25, 2004 and [Przybyla's] past medical history, as well as his opinion that [Przybyla] sustained no permanent partial impairment as a result of the motor vehicle accident of January 25, 2004." (Appellant's App. pp. 152–53). Indiana Trial Rule 26 provides that parties may obtain discovery by means of written interrogatory "regarding any matter, not privileged, which is relevant to the subject-matter involved in the pending action" including "the identity and location of persons having knowledge of any discoverable matter." Parties are under an obligation to construe an interrogatory fairly. *Outback Steakhouse of Fla., Inc.,* 856 N.E.2d at 75. As such, interrogatories should not be interpreted with excessive rigidity or technicality, but a rule of reason should be applied. *Id.* Answers to interrogatories must be responsive, full, complete and unevasive. *Id.* at 76. This commonsense approach to the interpretation of interrogatory requests furthers the purposes of discovery, namely, to allow

parties to obtain evidence necessary to evaluate and resolve their dispute based on a full and accurate understanding of the true facts, to promote settlement, to remove surprise from trial preparation, and to narrow the disputed issues and facts requiring trial. *Id.*

In accordance with the interrogatories, Nature's Link produced Dr. Lorber's initial report on February 5, 2007, and his revised report less than two weeks before trial, on March 1, 2007. In his revised report, Dr. Lorber concluded that "[w]hile [Przybyla] may have sustained a temporary aggravation of his pre-existing cervical condition [ ] as a result of his involvement in the motor vehicle accident of 25 January 2004, there is no convincing evidence that he sustained either a permanent aggravation, or an acceleration of his pre-existing cervical condition." (Appellant's App. p. 122). After reviewing Dr. Lorber's report, Przybyla deposed him less than two weeks prior to trial. During the deposition, Dr. Lorber assured that his revised report contained all of his opinions concerning Przybyla's medical condition.

Despite Dr. Lorber's firm assurance at the deposition, during the second day of trial, after Przybyla rested his case-in-chief, Dr. Lorber testified for the first time that Przybyla suffers from SJIDD. Specifically, in response to Nature's Link's questioning on direct concerning "the condition of [Przybyla's] spine as it existed before this accident," Dr. Lorber stated that Przybyla "had significant problems with his neck, his upper back, and lower back ... and part of that resulted from a disease process which [is] [SJIDD]." (Tr. pp. 610–11). Dr. Lorber clarified to the jury that SJIDD is "a hereditary, genetic, familial disease and it leads to premature disk degeneration." (Tr. p. 611). Applying the disease to Przybyla, Dr. Lorber added that "he has a genetic problem that

leads to premature degeneration in his spine ... so it's a genetic predisposition to back problems that he has, and it's manifested [ ] clearly." (Tr. p. 611–12).

During cross-examination, Dr. Lorber admitted that, prior to his direct testimony in court, he had never identified the specific disease pathology of SJIDD either in his written report or in his deposition testimony. Dr. Lorber conceded that he had only reached the diagnosis a few days prior to trial, after his deposition, and after Nature's Link's counsel had personally hand-delivered Przybyla's MRIs to him for his review.

Unlike Nature's Link, we find that Dr. Lorber's testimony amounted to more than a mere specification of the medical opinion advanced in his written report and deposition. Dr. Lorber originally opined that Przybyla's back pain was largely the result of prior collisions and a fall, but he presented to the jury a new diagnosis of a hereditary disease. Thus, instead of trying to distinguish between Przybyla's injuries resulting from an accident and his degenerative disk disease, the jury was now suddenly faced with the new pathology of a "genetic, hereditary, familial predisposition" mostly prevalent in young adults. (Tr. p. 612). This new medical opinion can rightly be considered a "Eureka" moment further bolstering Dr. Lorber's earlier testimonial conclusions regarding Przybyla's multi-level disk degeneration disease unrelated to the accident.

As our supreme court stated before, Indiana's discovery rules are specifically designed to avoid surprise and a trial by ambush. *See Canfield v. Sandock,* 563 N.E.2d 526, 528 (Ind.1990), *reh'g denied.* Indiana courts have consistently rejected a gaming view of the litigation process and have instead instituted rules "the purposes of which are to provide parties with infor-

mation essential to the litigation of all relevant issues, to eliminate surprise and to promote settlement, with a minimum of court involvement in the process." *Id.* Here, Nature's Link abused those rules. It is clear that Nature's Link was aware of Dr. Lorber's materially revised medical opinion and subsequent change in intended testimony the day before trial. Nevertheless, Nature's Link never notified Przybyla or the trial court of this new development, but rather made a unilateral decision to reveal Dr. Lorber's SJIDD diagnosis for the first time during the doctor's testimony and after Przybyla had rested his case-in-chief.

The parties' duty to supplement discovery pursuant to T.R.26(E) does not stop at the outset of trial. *Outback Steakhouse of Fla., Inc.,* 856 N.E.2d at 78. To permit a party discovering its own error or omission to remain silent would permit that party to benefit from its own concealment or error. *Id.* Ideally, Nature's Link should have filed a supplemental answer to Przybyla's interrogatory; at the very least, Nature's Link should have apprised the trial court or Przybyla of Dr. Lorber's SJIDD diagnosis. Here, no effort at all was made. In fact, Nature's Link's counsel even conceded that he never contacted Przybyla to disclose the new diagnosis because he "was focused on more important issues." (Tr. p. 992).

Due to Nature's Link's failure to disclose Dr. Lorber's new opinion of an hereditary and genetic pathology, Przybyla was prevented from fairly presenting his case at trial. The immediate practical effect of Nature's Link's misconduct amounted to denying Przybyla an opportunity to investigate and effectively cross-examining Dr. Lorber and an opportunity to have Dr. Weidenbener review the new diagnosis for purposes of his own trial testimony. Accordingly, Nature's Link's violation of its

discovery obligations prevented Przybyla the chance to consult with experts, research SJIDD and prepare a cross-examination of Dr. Lorber's late diagnosis.

Finally, application of T.R. 60(B)(3) requires Przybyla to make a *prima facie* showing of a meritorious defense. One way to meet this requirement is to identify evidence that, if credited, demonstrates that a different result would be reached if the case were retried on the merits. *Outback Steakhouse of Fla., Inc.,* 856 N.E.2d at 81. Here, Dr. Weidenbener in his post-trial affidavit stated, in pertinent part:

> Had I been aware of Dr. Lorber's opinion regarding [SJIDD], I could have provided the jury with adequate information concerning [SJIDD] to counter Dr. Lorber's opinion. I vould have related to the jury that [Przybyla] did suffer from [SJIDD], however, it was unlikely a factor in Przybyla's disability, as it was an incidental finding.
>
> . . .
>
> I informed [Nature's Link's counsel] that, had I known of his apparent diagnosis of [SJIDD] prior to trial, and had I been able to testify following Dr. Lorber's testimony, I could have clarified a number of issues concerning [SJIDD] and would have been able to Give the jury a very clear understanding of it. I would have testified that [Przybyla] did have SJIDD, however it was an incidental finding, and that my opinions regarding causation of his occupational disability and the resultant medical expenses he incurred were related to the automobile accident of January 25, 2004.

(Appellant's App. p. 217).

Based on Dr. Weidenbener's affidavit, it is likely that the jury could reach a different result when confronted with the clarifying testimony as proposed by Dr. Weidenbener. His statements would explain Dr. Lorber's SJIDD diagnosis and place it

in perspective. Although it is always somewhat speculative to evaluate the possible impact of testimony on the jury, based on Nature's Link's misconduct this speculation should not tip in its favor. Therefore, we find that Przybyla established a *prima facie* meritorious defense.

 Nevertheless, Nature's Link now asserts that Przybyla's argument is a futile exercise as he failed to object at trial to Dr. Lorber's SJIDD testimony. Essentially, Nature's Link claims that if Przybyla perceived a discovery violation, the proper remedy was to object, and then request that the trial court exclude any previously undisclosed opinions.

A similar failure to object to previously undisclosed evidence occurred in *Outback Steakhouse*. Our supreme court noted that as Outback Steakhouse was not advised in advance of the witness' change in testimony, it had no time to evaluate whether to seek a continuance, move for a mistrial, or redepose the witness to explore the circumstances of her change of heart. *Id.* at 79. As such, the supreme court held that Outback could not be charged with waiver because it was ignorant of all relevant facts due to misconduct on the part of its opponent. *Id.*

Likewise here, Przybyla was suddenly faced with a new medical diagnosis while Dr. Lorber was being questioned by Nature's Link's counsel. Przybyla did not seek a continuance of trial because Nature's Link presented a witness whom Przybyla expected and he had no reason to believe Dr. Lorber would not adhere to his earlier deposition testimony. At the moment Dr. Lorber proposed his SJIDD pathology, Przybyla did not have any time to evaluate whether to seek a continuance, move for a mistrial, or cross-examine Nature's Link's expert. We agree with the trial court that "to conclude that [Przybyla] waived any error by failing to object during Dr. Lorber's direct testimony would obliterate the promise of a fair trial and promote trial by ambush." (Appellant's App. p. 11). As a result, we cannot charge Przybyla with waiver.

## CONCLUSION

Based on the foregoing, we find that the trial court properly ordered a new trial pursuant to T.R. 60(B)(3) after finding that Nature's Link's medical expert changed his diagnosis and opinion of Przybyla's injuries at trial without having previously disclosed this new diagnosis to Przybyla.

Affirmed.

KIRSCH, J., and MAY, J., concur.